Roger Dale PARKER *v.* STATE of Arkansas

CR 78-208                                    582 S.W. 2d 34

Opinion delivered June 18, 1979
(Division I)

*Barrett, Wheatley, Smith & Deacon,* for appellant.

*Steve Clark,* Atty. Gen., by: *Joseph H. Purvis,* Deputy Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. Roger Dale Parker was convicted of having raped two young women who, according to the proof, were at the time college students living together in an apartment in Jonesboro. Parker received two 50-year sentences, to run consecutively. We find no merit in his six points for reversal.

I. It is first argued that the court erred in refusing to permit Parker to represent himself without the assistance of counsel. At a pretrial conference on March 30, 1978, the court denied Parker's request, as the court did not feel that it would be in Parker's best interest to represent himself. We need not decide whether that ruling was contrary to our holding in *Barnes* v. *State,* 258 Ark. 565, 528 S.W. 2d 370 (1975), because the court raised the point again immediately before the trial began on May 10. By that date Parker had consulted with his two attorneys for some time. After his rights had been explained Parker stated that he wanted the two attorneys to represent him. It is now argued that Parker was entitled to a reasonable time in which to make up his mind. There was no such request either by Parker or his

counsel. Since Parker had been consulting with his attorneys, apparently for some weeks, and had had an opportunity to make up his mind about the desirability of their services, we find that in the circumstances he voluntarily and intelligently accepted the services of counsel in preference to attempting to represent himself.

II. Before the trial court granted a defense motion that the witnesses for the State not be permitted to testify to any facts indicating that Parker was engaged in an attempted burglary when he was arrested 47 days after the asserted offenses of rape. An officer was nevertheless allowed to testify that Parker was in a "crouching" position when he was arrested. The officer further testified, however, that a pair of gloves (which were later introduced in evidence) were on the ground right in front of Parker when he was arrested. We do not see how the jury could have drawn an unfavorable inference merely from Parker's crouching position, and it was relevant to connect him with the gloves. There was no error.

III. One of the victims testified that she did not see Parker's face during the rapes, but she identified him at a line-up by his voice. After she had pointed him out in the courtroom, defense counsel objected to this question (and inferentially to the answer) as being leading:

Q. Is there any question in your mind about it?

A. No, there is not.

We do not regard the question as objectionable, for we do not see how it could have been asked in any other way. It can hardly be classed as leading, because, even though it was answerable yes or no, it did not suggest the answer. *Jim Fork Coal Co. v. Rhotenberry,* 183 Ark. 319, 35 S.W. 2d 590 (1931).

IV. The asserted rapes occurred on a bed at the victims' apartment. The investigating officers carefully folded the sheets and sealed them for delivery to the crime laboratory. When Parker was arrested 47 days later, the officers took possession of his outer clothing and the gloves that were in front of him. An expert witness for the State testified that the

sheets and the clothing and gloves all contained microscopic metal flakes that were compared and found to be indistinguishable. It was argued below that the evidence should not be admitted, because it was not shown that Parker was wearing the same clothing both at the time of the rapes and at the time of his arrest. The expert testimony was relevant, however, as circumstantial evidence tending to show that the metal flakes on the sheets came from Parker's clothing, even though it may not have been the same clothing that he was wearing when he was arrested. In fact, the State apparently expected to prove that similar metal flakes were obtained at the manufacturing plant in Paragould where Parker worked. No similarity was established, however, with regard to the particles found at the plant. The jury was later instructed to disregard the evidence about the particles at the plant. Even so, the similarity between the microscopic particles found on the sheets and those found on Parker's clothing when he was arrested had a tendency to make his identity as the rapist more probable than it would have been without that evidence. The evidence was therefore relevant. Rule 401, Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Supp. 1977).

It is argued, however, that the State's failure to introduce more complete proof, such as that similar particles were found where Parker worked, was so prejudicial as to deny him a fair trial. The trouble is, there was no proper objection below to support the argument now made. There was no motion to strike the expert's testimony about the similarity between the particles, nor was there a motion for a mistrial after the court had instructed the jury to disregard the testimony about the finding of particles where Parker worked. Apparently the defense was satisfied with the court's rulings and thus is not now in a position to argue a point not supported by an objection.

V. Before Officer Westmoreland testified about finding metal particles where Parker worked, defense counsel asked that such testimony be prohibited, on various grounds such as that a search warrant should have been obtained, that the evidence would be a surprise because it had not been indicated by discovery, and that the evidence would be irrelevant

and prejudicial. The court merely ruled that the objections would be considered when the evidence was proffered by the State, as the court had no way of knowing in advance whether it would be admissible. It is now argued that the court should have prohibited the testimony in advance. The court's ruling, in the circumstances, was entirely proper. True, the court did eventually instruct the jury to disregard the officer's testimony, apparently because it was not sufficiently connected up, but that often happens in the course of a trial. Counsel apparently were satisfied with the court's admonition to the jury. We find no reversible error.

VI. Finally, it is argued that the State should not have been allowed to show that a green towel taken from the victims' bathroom also contained metal flakes, because it was not shown that Parker had used the towel. In the first place, there is some indication that Parker washed up in the bathroom, so that he might have used the towel. In the second place, the important point is that the flakes were found on the sheets. That they were also on the towel is either immaterial or slightly favorable to Parker, as tending to show that he and the flakes were not necessarily connected with one another. Thus at most the possible error was harmless.

Affirmed.

We agree. HARRIS, C.J., and BYRD and HICKMAN, JJ.