Quincy MOORE *v.* STATE of Arkansas

CR 04-927 207 S.W.3d 493

Supreme Court of Arkansas
Opinion delivered April 21, 2005

*Daniel D. Becker*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Quincy Moore was convicted of aggravated robbery, residential burglary, theft by receiving, and theft of property. He was charged as a habitual offender and sentenced to two life sentences on the aggravated robbery charges and concurrent sentences on the remaining charges. Mr. Moore's counsel has filed a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and Ark. Sup. Ct. R. 4-3(j)(1), asserting that there is no merit to any arguments arising from the circuit court's rulings that were adverse to his client. The State concurs that there is no merit to this appeal.

According to the testimony presented at trial, Mr. Moore and two other males were in the process of burglarizing the home

of Scott Campbell when Mr. Campbell was summoned home by his neighbor and found them and a Cadillac in his driveway. Richard Jarrett, one of the other males, testified that Mr. Moore was aware that the Cadillac had been stolen. Mr. Campbell testified that the men were shutting his garage door and that one of them was sitting on his four wheeler. Mr. Jarrett further testified that, while at the Campbell house, the three men also stole guns, a bike, and a jewelry box. The total value of the stolen property was over $5,000.

After being caught by Mr. Campbell, the three men fled in the Cadillac and Mr. Campbell chased them. During the course of the chase, one of the men, identified by Mr. Campbell as Mr. Moore, began shooting at Mr. Campbell and hit his truck with a bullet. Mr. Campbell testified that Mr. Moore shot at his truck at least nine times. Mr. Campbell contacted the police with his cell phone, and eventually the chase reached a roadblock set up by the police. The three men got out of the Cadillac and attempted to flee. Mr. Moore, carrying a gun, got into a police patrol car and drove away. He abandoned the police car further down the road. Mr. Moore was eventually arrested, following a statement by Mr. Jarrett identifying him as a participant.

### I. First Adverse Ruling — Voir Dire

The first adverse ruling by the circuit court occurred during the voir-dire stage of the trial when counsel for Mr. Moore objected to the State asking, "Anyone else think the State should be held to a higher burden than beyond a reasonable doubt?" Mr. Moore's attorney argued:

> He's not asking if they understand. He asking if they think it's fair and . . . he's asking them to pre-judge what he has to do . . . . This doesn't have anything to do with their qualifications or whether they can sit as a juror. This is going towards whether they're going to believe that his side is more fair than the other side is more fair.

The circuit court disagreed, and ruled that the question asked generally if the jury could follow the instructions. The course and conduct of voir-dire examination of the venire is primarily within the trial court's discretion and its decision will not be reversed absent an abuse of discretion. *Hall v. State*, 315 Ark. 385, 868 S.W.2d 453 (1993).

The *Hall* case is dispositive of this issue. In *Hall*, the prosecutor, in attempting to discern whether the jurors would hold the State to the correct burden, explained reasonable doubt

by informing jurors that they did not have to "be one hundred percent certain in order to render a guilty verdict." *Id.* at 391, 868 S.W.2d at 456. Hall argued that this attempt to quantify reasonable doubt was improper. In affirming, we noted that during the course of voir dire, the trial court quoted the AMCI definition of reasonable doubt and asked one juror in the hearing of others if she would listen to and follow the court's instructions on burden of proof. Similarly, in this case, the prosecutor merely asked if any of the jurors thought the State should be held to a higher burden than beyond a reasonable doubt. Accordingly, we hold that the circuit court did not abuse its discretion in ruling that the question was a proper inquiry into whether the jurors would follow the instructions.

## II. *Second Adverse Ruling — Hearsay Objection*

■ The second adverse ruling by the circuit court was in response to the defendant's hearsay objection to the statement made by Mr. Campbell while testifying, "I got a call from a neighbor, she said, you know, you need to get home right away." The circuit court overruled the objection, concluding that the statement was not hearsay. We will not reverse the trial court's ruling on a hearsay question absent an abuse of discretion. *Sanford v. State,* 331 Ark. 334, 962 S.W.2d 335 (1998). An out-of-court statement is not hearsay under Rule 801(c) of the Arkansas Rules of Evidence if it is offered to show the basis for the witness's actions. *Sanford v. State, supra;* Ark. R. Evid. 801(c)(2004). Here, the statement was not offered to show the truth of the matter asserted, but merely to explain why Mr. Campbell rushed home. Thus, the circuit court did not abuse its discretion in allowing the statement.

## III. *Third Adverse Ruling — Outside the Scope of Cross-Examination*

The third adverse ruling occurred when the circuit court allowed the prosecutor on redirect to inquire as to the value of the property taken in the burglary, despite the fact that evidence concerning the value had not been introduced during the direct examination or the cross-examination. Defense counsel objected, arguing the question was outside the scope of his cross-examination and should not be allowed. The circuit court agreed that the question was technically outside the scope of the cross-examination, but allowed it in the interest of expediency, noting

that the State could always recall the witness. This court has recognized that the scope and extent of redirect examination lie within the sound judicial discretion of the trial judge. *Easter v. State*, 306 Ark. 452, 815 S.W.2d 924 (1991). In this matter, the court has recognized that the court's discretion is very liberal. *Id.* A judge may permit a party to bring out on redirect examination some matter that is relevant to that party's case or defense and that through oversight he or she has failed to elicit on direct. *Id.* Moreover, Ark. Code Ann. § 16-43-703 (Repl. 1999) gives the trial court discretion to allow the reexamination of a witness and Ark. R. Evid. 611(a) imposes a duty on trial courts to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . avoid needless consumption of time." Ark. R. Evid. 611(a) (2004).

The *Easter* case is instructive on this point. In *Easter*, the prosecutor, during his direct examination of a rape victim, failed to elicit testimony from the victim that the defendant pulled her pants down before he forced her into the bedroom. While this issue was not touched upon during cross examination, the trial court allowed the prosecutor to go back to the issue and elicit the relevant information during redirect. In this case, though the prosecutor did not address the value of the stolen property on direct examination, the circuit court did not abuse its discretion in allowing reexamination on this point during redirect because the value of the goods was relevant to the State's case. *Easter v. State, supra.*

### IV. Fourth Adverse Ruling — Inappropriate Conclusion

The fourth adverse ruling by the circuit court occurred during the cross-examination of a police officer investigating the crime. After the officer testified that he did not know if anyone from the police department had taken fingerprints off of the Cadillac or the patrol car, the defense counsel asked him, "But it would be reasonable or a fair statement that if Mr. Moore had been in that car there should be some prints or some signs." The State objected, arguing the question called for a scientific conclusion. The circuit court ruled that, although lay witnesses could give opinions, the jury did not need an opinion on this question because it was a matter of common sense.

The admissibility of lay opinions is governed by Ark. R. Evid. 701, which states,

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are
>
> (1) Rationally based on the perception of the witness; and
>
> (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

Ark. R. Evid. 701 (2004). The Rule today is not a rule against conclusions, but it is rather a rule conditionally favoring them. *Felty v. State,* 306 Ark. 634, 816 S.W.2d 872 (1991); *Carton v. Missouri Pac. R.R.,* 303 Ark. 568, 798 S.W.2d 674 (1990). If, however, attempts are made to introduce meaningless assertions that amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the Rule. *Felty v. State, supra.* Whether to admit relevant evidence rests in the sound discretion of the trial court, and the standard of review is abuse of discretion. *Moore v. State,* 323 Ark. 529, 915 S.W.2d 284 (1996); *Skiver v. State,* 336 Ark. 86, 983 S.W.2d 931 (1999).

■ Our court's decision in *Skiver v. State, supra,* directly controls this issue. In *Skiver,* the defendant asked a police officer for his opinion as to whether Mr. Skiver could have carried items collected from the bedroom into the house without anyone seeing the items. Though we noted that the officer could give his opinion on whether the items could have been concealed based on his observation of the items, we affirmed the trial court's refusal to allow the question because we could perceive "no reason for seeking [the officer's] opinion as to whether the items could be concealed, and no reason was offered when the objection was made." *Id.* at 97, 983 S.W.2d 937. Similarly, here, the question of whether it would be reasonable to find fingerprints in the car if Mr. Moore had been in the car does not necessarily call for information outside the scope of knowledge of the officer. However, as numerous other witnesses affirmatively placed Mr. Moore in the Cadillac and the patrol car, the officer's opinion on whether there should be fingerprints in the car would not help the jury understand his testimony or determine a fact in issue. *Skiver v. State, supra.* Moreover, the defense did not offer any reason why such information would be helpful to the jury at the point the objection was made. *Id.* Under these circumstances, we hold that the circuit court did not abuse its discretion in refusing to allow the question.

## V. Fifth Adverse Ruling — Leading Questions

The fifth adverse ruling by the circuit court was in response to an objection to a series of leading questions during the direct examination of a witness for the State. The following colloquy occurred between the prosecutor and Mr. Jarrett, the witness:

Q Did you finally end up out in, down in England with the roadblock?

A Yes, sir.

Q Okay. And were there handguns in the front seat?

A In the front seat?

Q Or in the, in the, in — There was [sic] some guns in the trunk. Right?

A Right.

Q Did they have guns in the car?

A Yeah.

At this point, Mr. Moore objected to the questions as leading.

Ark. R. Evid. 611(c) states, "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." Ark. R. Evid. 611(c) (2004). In other words, the rule does not completely bar leading questions on direct, but gives the trial court discretion to permit leading questions to develop a witness's testimony. *Chase v. State,* 334 Ark. 274, 973 S.W.2d 791 (1998). Even though a question can be answered "yes" or "no," it is not a leading question if it does not suggest a particular answer. *Parker v. State,* 266 Ark. 13, 582 S.W.2d 34 (1979). Here, the circuit court noted that the prosecutor was "bordering on" leading, and admonished him to "let the witness testify." Furthermore, the witness had previously testified that there were guns in the trunk of the car and that guns had been fired while he was driving. The questions Mr. Moore objected to were used to clarify or highlight elements of the witness's previous testimony. We therefore hold that the circuit court did not abuse its discretion. *Chase v. State, supra.*

## VI. Sixth Adverse Ruling — Directed Verdict

 The final adverse ruling by the circuit court was a denial of a directed verdict on all charges. This issue, however, is not preserved for appellate review, as Mr. Moore failed to renew his motion at the close of the rebuttal case by the State. *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997).

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).

Affirmed; motion to withdraw granted.