Cite as 2025 Ark. App. 594

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CR-25-57

|  |  |
|---|---|
| RICO JERMAINE ROSE<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered December 10, 2025<br><br>APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT<br>[NO. 14CR-23-58]<br><br>HONORABLE DAVID W. TALLEY, JR., JUDGE<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Appellant Rico Jermaine Rose appeals his convictions after a Columbia County jury convicted him of one count of first-degree battery against an employee of a correctional facility; one count of second-degree battery against an employee of a correctional facility; one count of first-degree escape; and two counts of theft of property. Rose argues on appeal that the circuit court erred by overruling his objection to the prosecutor's voir dire and by denying his directed-verdict motion as to the second count of theft of property. We affirm.

I. *Background Facts*

Rose's charges stemmed from an inmate takeover of the Columbia County Jail on the night of January 13, 2023. The State alleged that Rose instigated the takeover wherein he attacked two jailers, procured the master key from one of them, and he and other inmates used the key to unlock approximately eleven pods—each of which housed multiple inmates. As a

result, the inmates overtook the jail for an hour and a half; and four inmates, including Rose, escaped in two stolen vehicles.

A jury trial took place on July 29–30, 2024. During voir dire of the first jury panel, the prosecutor asked the prospective jurors whether they could consider choking or blows to the head causing loss of consciousness a serious injury. Rose did not object to the question. Voir dire continued, and the prosecutor asked the prospective jurors in the second jury panel whether they could agree that choking someone until the person is unconscious is a serious injury. At this point, Rose objected to the State's question, arguing that it was improper for the State to ask prospective jurors to commit to a finding that choking is a serious physical injury during voir dire. The circuit court shared its concerns regarding the State's phrasing of the question and directed the prosecutor to rephrase without attempting to give its own definition of serious physical injury or asking the prospective jurors to commit that choking constituted a serious physical injury. Rose asked the court to note a continuing objection to the line of questioning. The prosecutor rephrased his question as follows:

> In [b]attery in the [f]irst [d]egree, it talks about serious physical injury. The Judge is going to give you a definition and I'm going to read the definition as I have it on this form and I believe this is the definition [t]he Court is going to give you whenever we get down to these charges.
>
> "Serious physical injury means physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ."
>
> Okay. If there's no stabbing in this case, if there's no blood, if there's no shooting, can there still be serious physical injury to you if the evidence shows there was a lack of oxygen caused by the Defendant. Can you consider that definition as serious injury?

2

The State continued to question the prospective jurors regarding their understanding of a serious physical injury throughout voir dire and whether they could consider choking and causing someone to lose his air flow a serious injury.

The following evidence was established at trial. Micah Schamehorn, one of the two jailers working on the night of January 13, was "making rounds" checking on the inmates when Rose called out and told him that the television in his pod was not working. Schamehorn went inside Rose's pod to fix the television, and Rose grabbed him from behind and put him in a chokehold. Rose forced Schamehorn to the ground, causing him to hit his head and lose his glasses, and two other inmates assisted in the assault. When Schamehorn regained consciousness, he was handcuffed to one of the bunk beds, and his keys—which included the key to his Ford Escape—were missing.

Arkansas State Police Officer Adam Pinner investigated the inmates' takeover and escape. He reviewed surveillance video taken from the eleven cameras inside the jail. After Rose handcuffed Schamehorn to the bed and took his keys, surveillance video showed him unlocking several pods and then walking down the hall toward the control room where the second jailer on duty, Mallorie Wyrick, was working. Surveillance video showed Rose choking Wyrick from behind, hitting her in the head, handcuffing her, and throwing her to the ground. Eventually, Wyrick was able to escape and lock herself inside a closet in the control room where she called 911 and remained until help arrived. After her release, Wyrick discovered that her keys and her Toyota Corolla were missing.

After Rose left the control room, surveillance video showed him moving throughout the jail attempting to unlock doors and eventually leaving the jail through the back kitchen door.

3

Rose then ran across the parking lot and made his getaway in the Ford Escape. Video also showed the three other inmates driving away in the Toyota Corolla. The inmates were subsequently captured—two were arrested in Louisiana; one was arrested in Hot Springs, Arkansas; and Rose was arrested approximately twenty-four hours after he escaped inside a shed at a residence in Magnolia.

After the State rested its case, Rose moved for a directed verdict on each count charged. Regarding the theft of the Toyota, Rose argued that he had no involvement in the theft, and by the time the vehicle was taken by the other inmates, they were no longer working together as accomplices. The circuit court denied the motions. Rose rested his case without presenting any evidence and renewed his motions for directed verdict—the circuit court once against denied the motions. The jury convicted Rose of one count of first-degree battery against an employee of a correctional facility, one count of second-degree battery against an employee of a correctional facility, one count of first-degree escape, and two counts of theft of property. He was sentenced to an aggregate term of 152 years' imprisonment. Rose filed a timely notice of appeal; this appeal followed.

## II. *Standard of Review*

A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002); *Woods v. State*, 2019 Ark. 62, 567 S.W.3d 494. In reviewing a challenge to the sufficiency of the evidence, the appellate court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Stone*, *supra*. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Hampton v. State*, 357 Ark.

473, 183 S.W.3d 148 (2004). When the theory of accomplice liability is implicated, we will affirm if substantial evidence exists that the defendant acted as an accomplice in the commission of the alleged offense. *Conway v. State*, 2016 Ark. 7, 479 S.W.3d 1. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *May v. State*, 2022 Ark. 216, 655 S.W.3d 74.

Additionally, the course and conduct of voir dire examination of prospective jurors are within the circuit court's sound discretion, and the latitude of that discretion is wide. *See* Ark. R. Crim. P. 32.2 (2024); *Isom v. State*, 356 Ark. 156, 148 S.W.3d 257 (2004). Decisions regarding voir dire will not be reversed absent an abuse of discretion. *See Moore v. State*, 362 Ark. 70, 207 S.W.3d 493 (2005); *Isom, supra*.

III. *Points on Appeal*

On appeal, Rose maintains that (1) the circuit court abused its discretion by overruling his objection to the prosecutor's voir dire, and (2) the circuit court erred by denying his motion for directed verdict on the second count of theft of property.

IV. *Discussion*

A. Sufficiency of the Evidence

Rose argues that the circuit court erred by denying his directed-verdict motion as to the theft of the Toyota Corolla. Rose's conviction for the theft of the Toyota is based on his status as an accomplice. Rose contends that there was insufficient evidence that he and the other escapees worked collectively after they were outside the jail. This court must consider this

5

argument first on appeal due to double-jeopardy considerations. *See, e.g.*, *Bonee v. State*, 2023 Ark. App. 520, 678 S.W.3d 864.

A person is criminally liable for the conduct of another person when he is the accomplice of another person in the commission of an offense. Ark. Code Ann. § 5-2-402(2) (Repl. 2024). When two persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Jackson v. State*, 2018 Ark. App. 330, 552 S.W.3d 55. A person is an accomplice of another person if, with the purpose of promoting or facilitating the commission of the offense, he or she solicits, advises, encourages, coerces, aids, agrees to aid, or attempts to aid in planning or committing the offense. Ark. Code Ann. § 5-2-403(a)(1)–(2) (Repl. 2024).

Furthermore, a participant cannot disclaim responsibility because he did not personally take part in every act that went to make up the crime as a whole. *Price v. State*, 2019 Ark. 323, 588 S.W.3d 1. Relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in the proximity of a crime, the opportunity to commit the crime, and an association with a person involved in a manner suggestive of joint participation. *Williams v. State*, 2025 Ark. App. 194, 712 S.W.3d 325. The law in Arkansas makes no distinction between the criminal liability of a principal and an accomplice. *Winters v. State*, 2013 Ark. 193, 427 S.W.3d 597. Thus, a defendant can be found guilty of his own conduct and that of an accomplice, and when multiple people participate in the commission of a crime, each is an accomplice and criminally liable for the conduct of all. *Id.*

A person commits theft of property if he or his accomplice knowingly takes or exercises unauthorized control over the property of another person with the purpose of depriving the owner of the property. *See* Ark. Code Ann. § 5-36-103 (a)(1) (Supp. 2023). A person acts knowingly with respect to his "conduct or the attendant circumstances when [the person] is aware that his or her conduct is of that nature or that the attendant circumstances exist[.]" Ark. Code Ann. § 5-2-202(2)(A) (Repl. 2024). Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *McDaniel v. State*, 2019 Ark. App. 66, 571 S.W.3d 43. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.*

Rose argues on appeal that "once the escapees were outside of the jail there was no evidence that [he] solicited, advised, encouraged or coerced anyone to take Wyrick's car, or that he aided, agreed to aid, or attempted to aid the others in planning or committing the theft of the car." Furthermore, Rose contends that it was not foreseeable as a natural and probable consequence that the other escapees were going to steal Wyrick's car versus fleeing on foot. Accordingly, Rose maintains that the jury's verdict finding him guilty of the theft of Wyrick's vehicle was based on speculation and mere suspicion of guilt. We disagree.

The evidence established that Rose assaulted Schamehorn, took Schamehorn's keys to unlock the pod doors, and left the area with Schamehorn's lanyard. Rose then handed the keys off to another inmate who unlocked the remaining pods. Next, Rose assaulted Wyrick—who was working in the control room—and the keys to her Toyota Corolla were subsequently taken from the control room by one of the inmates. Accordingly, we find no merit to Rose's argument that because he left the jail alone and, once outside, went the opposite direction than the others,

"the accomplice liability must end." As set forth above, this argument is contradictory to Arkansas law. The jury's verdict was supported by substantial evidence that Rose aided and facilitated in the theft of both vehicles; he cannot escape accomplice liability for the theft of the Toyota Corolla simply because escaped in a different vehicle.

## B. Voir Dire

Next, Rose argues that the circuit court abused its discretion by allowing the State to question prospective jurors during voir dire—over his objection—regarding facts expected to be proved at trial and attempting to commit the jurors to a decision in advance of trial. In response, the State maintains that Rose's argument is meritless because the circuit court sustained the objection by directing the prosecutor to rephrase his question; thus, Rose has no adverse ruling to challenge on appeal. Furthermore, the State asserts that to the extent Rose is arguing that he was entitled to an admonition or mistrial, his arguments are barred on appeal because he did not seek either form of relief at trial. Because the circuit court overruled Rose's objection in part, we address the merits of whether the questioning was improper.

The purpose of voir dire examination is to discover whether there is any basis for challenges for cause and to gain knowledge for the intelligent exercise of peremptory challenges. Ark. R. Crim. P. 32.2; *Sanders v. State*, 278 Ark. 420, 646 S.W.2d 14 (1983). Such purpose, however, does not include an attempt to commit the jurors to a decision in advance. *Nutt v. State*, 312 Ark. 247, 848 S.W.2d 427 (1993). Additionally, "prospective jurors may not be questioned with respect to a hypothetical set of facts expected to be proved at trial and thus commit the jury to a decision in advance, but . . . they may be questioned . . . about their mental attitude toward certain types of evidence, such as circumstantial evidence." *Hobbs v. State*, 277

8

Ark. 271, 275–76, 641 S.W.2d 9, 12 (1982).  Voir dire is also used to identify jurors who are not able to impartially follow the court's instructions and evaluate the evidence, and how this particular purpose is accomplished falls within the circuit court's discretion.  *Reid v. State*, 2019 Ark. 363, 588 S.W.3d 725.

Here, it appears that the State was merely posing questions to the jury in an effort to establish that the jury pool understood the definition of a serious physical injury and whether it could consider certain acts that did not involve stabbing, shooting, blood, or broken bones a serious injury.  The questions posed by the prosecutor were therefore a permissible use of voir dire examination.  Because the circuit court is given broad discretion over the conduct of voir dire, we affirm.  Moreover, Rose never requested an admonition or a mistrial; thus, he cannot demonstrate prejudice. *See Sanders*, *supra* (holding that even though the circuit court permitted the prosecuting attorney to go beyond the purpose of voir dire, there was no motion for a mistrial or admonition; thus, there was no prejudicial error).

V. *Conclusion*

For the reasons stated above, we affirm Rose's convictions.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Law Offices of John Wesley Hall*, by: *Samantha J. Carpenter*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.