David FELTY *v.* STATE of Arkansas

CR 91-132                                           816 S.W.2d 872

Supreme Court of Arkansas
Opinion delivered October 14, 1991

*Robert N. Jeffrey*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant raped the prosecutrix in Hot Spring County, and then, only a short distance away and a short time later, raped her in Garland County. He was charged by separate informations with the crime of rape in each county. On his motion both offenses were joined, as part of a single scheme or plan, in Hot Spring County. He was tried there and found guilty of both charges. He appeals and argues five (5) points for reversal. None of them has merit, and we affirm both judgments of conviction.

The prosecutrix, a fourteen-year-old girl, was at the Pizza Hut Restaurant in the City of Hot Springs at about 11 p.m. and sought a ride home. The appellant responded that he would drive her home. Two (2) other men were with him. The four (4) of them got in appellant's car, and appellant drove toward Malvern. Along the way, he turned his car into a cemetery which is located in Hot Spring County. The two (2) other men got out of the car. Appellant remained in the car with the prosecutrix and twice forced her to have sexual intercourse with him. The prosecutrix and both of the other men were eyewitnesses and testified to the above facts.

The four (4) of them left the cemetery in appellant's car, and

appellant drove back to the City of Hot Springs and let the two (2) men out. He then drove the victim to a location near Carpenter Dam in Garland County and again raped her. The prosecutrix testified to this crime. Appellant's car ran out of gasoline and, when he went to get more gasoline, the prosecutrix got away and went to a friend's home. The friend's mother described the prosecutrix as upset and reporting that she had been raped. She was taken to the hospital. She had abrasions on her back and buttocks and had a tear in the external area of her vagina. The examining physician concluded there had been trauma to the area. After hearing all of the testimony, the jury found appellant guilty of both charges.

Appellant argues that there was insufficient evidence to convict him. We affirm a conviction if substantial evidence exists to support it. Evidence is substantial if the jury reaches its conclusion without having to resort to speculation or conjecture. The testimony of a rape victim satisfies the substantial evidence requirement in a rape case. The testimony of the victim alone was sufficient to support the verdict.

■ However, in this case, unlike most rape cases, there were two (2) eyewitnesses to one of the crimes. The testimony of the examining physician provided further proof of rape. Appellant questions the testimony of some of these witnesses by pointing out alleged discrepancies in their testimony. However, the credibility of witnesses and any discrepancy in testimony are for the jury to resolve. *Wilkins* v. *State*, 292 Ark. 596, 600, 731 S.W.2d 775, 778 (1987).

Appellant next argues that the trial court erred by not granting a mistrial after an allegedly prejudicial statement was made by the prosecutor on voir dire. The statement and the discussion which ensued between the prosecutor, defense counsel, and the trial judge were as follows:

> THE DEPUTY PROSECUTOR: The charge against [the appellant] is a Class Y Felony that carries from 10 to 40 years or life. He's charged with two counts of that. Is there anyone here, that if they found that he committed these acts, that could not sentence him to a long term in the penitentiary? If you can't do that, even though the law requires it based on the facts, is there anyone here that

can't—

THE DEFENSE ATTORNEY: Objection, Your Honor, may we approach the bench.

BY THE COURT: Sure.

THE DEFENSE ATTORNEY: Your Honor, I move for a mistrial. Mr Scrimshire [the deputy prosecutor] has inappropriately stated the law, that it requires a long sentence, and that is incorrect. The sentence is 10 to 40 to life, not a "long sentence."

BY THE COURT: [Directed to Mr. Scrimshire:] You may ask them if they will consider the full range of sentences, but don't try to commit them to a particular length of sentence.

BY PROSECUTOR: Sure.

BY THE COURT: [Directed to Mr. Becker:] Your motion for a mistrial is denied.

Appellant argues that he was prejudiced by the prosecutor's use of the phrase "long sentence" since it suggested to the jury that it was not possible to impose a minimum sentence. We have previously addressed prosecutorial inquiry on voir dire into jurors' feelings about the penalties applicable to the particular crime or crimes. In *Haynes* v. *State*, 270 Ark. 685, 606 S.W.2d 563 (1980), we held that it was prejudicial error for the prosecutor to repeatedly ask jurors if they would impose the maximum penalty upon a finding of guilt. We expressed concern that the jury may have felt obligated in advance of hearing the evidence to impose the maximum penalty upon finding the defendant guilty. *Id.* at 690-91, 606 S.W.2d at 565. In *Stephens* v. *State*, 277 Ark. 113, 640 S.W.2d 94 (1982), we revisited the issue presented in *Haynes*. There, we held the prosecutorial conduct was distinguishable from that in *Haynes* because the prosecutor, after stating the minimum and maximum penalties, merely asked the prospective jurors whether they would consider the maximum sentence. *Id.* at 115, 640 S.W.2d at 95. We wrote, "Unlike the situation in *Haynes*, no juror was in this case asked to commit to a possible penalty or to express an opinion on whether such a penalty would be suitable." *Id.* We found such an inquiry

to be proper on voir dire. *Id.*

The prosecutor's statement in this case is similar to that in *Stephens*. Here, the prosecutor gave the minimum and maximum sentences for the crime committed and then asked the potential jurors whether any of them could not sentence appellant to a "long term in the penitentiary." The prosecutor was essentially asking the jurors whether they could impose the maximum sentence. In *Stephens* we sanctioned such questioning. Thus, appellant's second argument is without merit.

Appellant further contends that the trial court erred by not allowing the attorneys to strike members of the jury panel in chambers. Voir dire of jury panels is provided for by Ark. Code Ann. §§ 16-33-101 and 16-33-301 to -308 and by A.R.Cr.P. Rule 32.2. Sections 16-33-303 to -308 give the number of peremptory and "for cause" challenges each party shall have and the manner in which they are to be exercised. Nothing is mentioned in any of these Code sections nor in Rule 32.2 concerning exercising one's challenges in chambers as distinguished from open court. The customary procedure has been to strike jurors in open court.

An analogous request for a particular voir dire procedure is the request for a sequestered voir dire. In *Heffernan* v. *State*, 278 Ark. 325, 327, 645 S.W.2d 666, 667 (1983), we said that sequestration of a jury for purposes of voir dire is within the discretion of the trial court. In *Heffernan*, a death penalty case, we found no abuse of that discretion by the trial court's refusal to allow sequestered voir dire. *Id.* The trial court did permit individual voir dire in *Heffernan* to alleviate the defendant's concern that the jurors would not be as candid in the presence of one another. *Id.*

We have discussed the issue of conducting voir dire in chambers. In *Commercial Printing Co.* v. *Lee*, 262 Ark. 87, 93, 553 S.W.2d 270, 273 (1977), we held that a court order which excluded the public from voir dire was invalid. We based our decision on the fact that voir dire is an essential part of the trial and that the defendant is guaranteed a right to a public trial. "[T]here is nothing in our constitution or the federal constitution which guarantees a private trial." *Id.* at 94, 553 S.W.2d at 273. In *Commercial Printing Co.* it was the defendant who requested that voir dire be held in chambers. In *Taylor* v. *State*, 284 Ark.

103,679 S.W.2d 797 (1984), it was at the State's request that voir dire was conducted in chambers, and it was the defendant who asserted his right to public voir dire. *See also, Morris* v. *State*, 302 Ark. 532, 792 S.W.2d 288 (1990).

In sum, sequestration of the jury for voir dire purposes and the conducting of voir dire in general is within the broad discretion of the trial judge. *Goodwin* v. *Harrison*, 300 Ark. 474, 780 S.W.2d 518 (1989). The appellant has not shown that the trial court abused that broad discretion by refusing to allow him to strike members of the jury panel in chambers.

Appellant's next argument is an evidentiary one. He argues that the trial court erred by admitting testimony of two (2) lay witnesses because "their statements were a conclusion by each witness which could not be supported by personal knowledge." The alleged conclusory testimony of one of the male witnesses was as follows: "—and [the victim] was like sitting against Joe, away from [appellant], whenever all this was going on. She was like scared of [appellant], and he was like insisting—." Appellant also objected to the following testimony of the other male witness: "Well, they really didn't stay down there that long. I mean, you know, he really—when he was up by the car is when it really all was going on. You know, she was just trying to get away from him, and she went down—."

Rule 701 of the Arkansas Rules of Evidence governs opinion testimony of lay witnesses. It provides:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are: (1) Rationally based on the perception of the witnesses; and (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

A.R.E. Rule 701.

The Rule today is not a rule against conclusions, but it is a rule conditionally favoring them. *Carton* v. *Missouri Pac. R.R.*, 303 Ark. 568, 572, 798 S.W.2d 674, 675 (1990). It provides that a lay witness may give an opinion with two (2) limitations. Limitation (1) is the requirement of firsthand knowledge or observation. Limitation (2) is phrased in terms of requiring

testimony to be helpful in resolving issues. Witnesses often find difficulty in expressing themselves in language which is not an opinion or conclusion. For example, if a witness is asked, "What kind of day was it?" he might respond, "Beautiful." It would be an admissible opinion. He would not have to state it was a clear skied, sunny, 72 degree spring day with a slight breeze. The witness can respond in everyday language which includes his conclusion about the type of day. However, if attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the Rule. *See* Advisory Committee's Notes to Federal Rule 701.

■ In sum, opinion testimony by lay witnesses is allowed in observation of everyday occurrences, or matters within the common experience of most persons. Statements by eyewitnesses that the victim was "scared" and "trying to get away" easily fit within the limitations imposed on lay witness opinion. The trial court did not abuse its discretion in allowing the testimony.

■ Appellant's final argument is that the trial court erred in overruling his objection to the introduction of a photo lineup into evidence. The basis of his objection was that the evidence was cumulative because it was presented after four (4) witnesses had testified and identified the appellant. We have said, "The mere fact that evidence is cumulative may be a ground for its exclusion, in the sound discretion of the trial judge, but it is hardly a basis for holding that its admission, otherwise proper, constitutes an abuse of discretion." *Beed* v. *State*, 271 Ark. 526, 542, 609 S.W.2d 898, 909 (1980).

Affirmed.