George SCROGGINS *v.* STATE of Arkansas

CR 92-887                                         848 S.W.2d 400

Supreme Court of Arkansas
Opinion delivered February 22, 1993

*Mark S. Cambiano*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Justice. Herbert Hawkins and the appellant, George Scroggins, were charged with delivery of a con-

trolled substance, methamphetamine, in exchange for money.

After a jury trial, Mr. Scroggins was found guilty and sentenced to forty years in the Department of Correction and fined $50,000. Mr. Hawkins was found not guilty.

In particular, Mr. Scroggins questions the admissibility of an informant's prior recorded testimony and the sufficiency of the evidence. He also presents numerous other assignments of error. Inasmuch as his arguments are meritless, we affirm the trial court.

## SUFFICIENCY OF THE EVIDENCE

■ Although some of the arguments raised by appellant involve admissibility of evidence, we will not consider trial errors until after we have determined sufficiency of the evidence, including that which perhaps should not have been before the jury. *Leshe* v. *State*, 304 Ark. 442, 803 S.W.2d 522 (1991); *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984).

■ Mr. Scroggins argues that the trial court erred in denying his motion for a directed verdict. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Harris* v. *State*, 309 Ark. 1, 828 S.W.2d 346 (1992). In reviewing the denial of a motion for directed verdict, the evidence is viewed in the light most favorable to the appellee, considering only the evidence that tends to support the verdict. *Atkins* v. *State*, 310 Ark. 295, 836 S.W.2d 367 (1992). On appellate review, we need only "ascertain that evidence most favorable to the appellee, and if there is substantial evidence to support the verdict, we affirm." *Smith* v. *State*, 310 Ark. 247, 837 S.W.2d 279 (1992). We find the evidence more than sufficient.

David Cains' testimony incriminated Mr. Scroggins. In his testimony, Mr. Cains discussed the drug deal he made with Mr. Scroggins as well as referring to past transactions of drug sales with him. Evidence presented at trial indicated that prior to Mr. Scroggins' visit to Cains' home, the Drug Task Force searched the home for drugs to ensure that the house was clear of drugs and remained outside watching the house as Mr. Scroggins arrived. Shortly after Mr. Scroggins delivered the drugs, Drug Task Force members entered Mr. Cains' home and secured the drugs allegedly delivered by Mr. Scroggins. The methamphetamines,

according to a task force member's testimony, were discovered underneath Mr. Cains' pillow. A chemist testified that he tested the drugs and found them to be 91.9 grams of methamphetamine.

■■ Determining credibility of witnesses is within a jury's domain. *See Felty* v. *State,* 306 Ark. 634, 816 S.W.2d 872 (1991). Obviously, here, the jury believed the prosecution's witnesses, and their testimony is more than sufficient to support the jury's verdict.

## ADMISSIBILITY OF INFORMANT'S PRIOR TESTIMONY

Mr. Cains, a confidential informant on behalf of the State, gave testimony during a suppression hearing in this case and was subject to cross-examination by Scroggins' attorney. Cains was murdered prior to trial. After a hearing to determine the admissibility of his testimony, the trial court determined that because Cains was subject to a "well-developed" cross-examination, his testimony was admissible at trial. Over the defendant's objections, a tape and its transcription of Mr. Cains' testimony were submitted to the jury.

On the tape, Mr. Cains testified that he had been arrested on September 29, 1990 for delivery of a controlled substance and felon in possession of a firearm. When his house was searched the day of his arrest, police discovered 2.5 ounces of amphetamine and 5 ounces of marijuana. Cains claimed that he obtained the amphetamine from Mr. Scroggins approximately three days earlier.

As a result of his arrest, Cains agreed to be a confidential informant and set up a meeting with Mr. Scroggins to purchase methamphetamines. That same day Mr. Cains telephoned Scroggins to buy "motorcycle parts" — their code for methamphetamine. About eleven o'clock that evening, Mr. Scroggins and Mr. Hawkins showed up at Mr. Cains' house. Scroggins gave Cains the drugs and told him that he could pay later.

The test for determining whether hearsay evidence should be admitted when the declarant is unavailable is provided in A.R.E. Rule 804(b)(1) which states:

Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or in a civil action or proceeding a predecessor in interest, *had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.*

(Emphasis added.)

■ The question of admissibility of an unavailable witness' testimony was fully addressed in *Scott and Johnson* v. *State*, 272 Ark. 88, 612 S.W.2d 110 (1981). In deciding that the testimony from a preliminary hearing was inadmissible, this court stated:

There has traditionally been an exception to the right of confrontation where a witness who testified at a prior trial is unavailable at a later judicial proceeding. State evidentiary rules can fall within this exception if two tests are met. First, the witness must be unavailable. . . . Next, the evidence must be reliable. . .*[A]dmission depends upon the circumstances surrounding the hearing. In the case of a preliminary hearing admission depends upon what kind of hearing is involved and whether it is a "full fledged" hearing or a limited one.*

(Emphasis added; citations omitted.) *Scott and Johnson*, 272 Ark. 88, 92-93.

By applying the *Scott and Johnson* analysis to the facts at hand, we hold that Cains' testimony was clearly admissible. Obviously, Cains was unavailable, and the circumstances of the suppression hearing insured the reliability of his testimony which was given under oath and before a judicial tribunal. Counsel for Mr. Scroggins was present and cross-examined Mr. Cains extensively.

The suppression hearing was held upon a motion by the defense to suppress statements taped during phone conversations between the confidential informant, David Cains, and Mr. Scroggins.

At the suppression hearing, Mr. Cains testified as to his arrest and subsequent agreement with authorities to serve as a confidential informant. He discussed how he and the appellant used the term "motorcycle parts" to describe methamphetamines and how Scroggins and co-defendant, Hawkins, had arrived at his house and engaged in a drug deal.

Mr. Scroggins' counsel was able to cross-examine Mr. Cains thoroughly. Although the purpose of the suppression hearing was to determine whether taped phone conversations between Cains and Scroggins should be suppressed, counsel for Mr. Scroggins went far beyond this issue in his cross examination. It is obvious that defense counsel's primary purpose in cross-examination was to impeach Mr. Cains, and for eight full pages of hearing transcript, he did just that. We agree with the trial court's finding that the cross-examination was "well-developed." For example:

Q. Have you ever been arrested on any other charges—not convicted, but arrested other than what you've told today?

A. On any felony charges?

Q. Any charges.

A. A couple of speeding tickets.

Q. Anything else?

A. Not that I can remember.

Q. Have you committed any felonies and not gotten caught that you haven't been arrested for?

A. No sir, not to my knowledge.

. . . . .

Q. Okay. Now, you said that you had called up George and told him that you had a man that had large amounts of money who wanted to buy some parts. Is that correct?

A. Yes, sir.

Q. When did this conversation take place?

A. On the afternoon of September 29th.

Q. After you were—you were arrested?

A. Yes, sir.

Q. But, we don't have that on tape, do we?

A. You don't have what on tape?

Q. The fact of the—when you said you had a man that had a large amount of money that wanted to sell-finance some drugs.

A. I believe that's in the—in the trans—I haven't heard the tape, but in the transcripts there was—the conversation that I had a man with some money that wanted to purchase some amphetamine.

Q. How much money were you talking about? What did you tell him?

A. I don't believe we discussed any particular—any particular amount.

Q. All right. And, this two and a half ounces of methamphetamine, how much is that worth?

A. That's an arbitrary amount actually. Some people sell it for more than other people sell it for.

Q. How much were you planning on paying for it?

A. For what he was going to bring?

Q. Uh, huh.

A. The four ounces that he was going to deliver?

Q. Uh, huh.

A. Six thousand dollars.

Q. That's how much that you—that you were planning on paying it?

A. That's what I was planning on paying for it.

Q. How did you know that was the amount of money you were going to pay for it?

A. Because that's what we—our previous dealings had

been.

Q. How many times have you bought drugs from him in the past?

A. (There is no response.)

Q. Do you have a problem with the question?

A. (The witness indicates affirmatively.)

Q. How many times have you bought drugs in the past?

A. Uh, a couple of occasions.

Q. Two occasions?

A. Two occasions.

Q. All right. And the occasion before this one we are talking about, when was it?

A. Two or three days—approximately two or three days before that.

Q. And, how much did you buy at that time?

A. I didn't buy any of it.

Q. Well, you said you bought some from him on two or three different occasions.

A. I never paid cash for it—it was—it was always, as the terms goes, fronted to me.

. . . .

Q. Now, you had bought motorcycle parts from him in the past have you not?

A. Well, I'd sold him motorcycle parts.

Q. Okay. You never had bought any at all from him?

A. (The witness shakes his head negatively.)

Q. Never have traded with him?

A. (The witness indicates negatively.)

Q. You're shaking you head no?

A. No, I've never purchased any parts from him. He bought parts from me, my shop.

The questions asked of Cains afforded the trier of fact with a satisfactory basis for evaluating the truth of Cains' statements. As such, the testimony was reliable and admissible under A.R.E. Rule 804(b)(1).

As sub-issues of this admissibility question, Mr. Scroggins also contends that the trial court erred in not deleting certain portions of Cains' taped testimony, providing the jury with a transcript of Mr. Cains' testimony, and by not admonishing the jury that evidence of other crimes is not admissible to prove character. We do not agree.

Mr. Scroggins wanted the portion of the tape that referred to Cains' previous purchase of drugs from Mr. Scroggins deleted. However, since Mr. Scroggins was charged with delivery of a controlled substance in exchange for money, the testimony was admissible to show his intent. A.R.E. Rule 404(b); *Morgan* v. *State*, 308 Ark. 627, 826 S.W.2d 271 (1992). As such, this portion of Cains' testimony should not have been deleted.

As for the other two sub-issues, they fail because Mr. Scroggins' objections at trial were either based upon different grounds or insufficient. Scroggins contends that the trial court erred in the procedure it used when the jury, during deliberation, asked to review Cain's testimony. At the time, Mr. Scroggins objected claiming that by giving the jury the transcript of Cains' testimony, the trial court was placing too much emphasis on it. Now, he claims that the trial court erred because it did not follow the procedure prescribed in Ark. Code Ann. § 16-89-125(e) (1987), which states that once the jury retires for deliberation, if there is a disagreement among them regarding some piece of evidence or if they need information on some point of law, "they must require the officer to bring them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, counsel of the parties." We will not consider an issue where the party changes grounds for an argument on appeal. *See Harris* v. *State*, 295 Ark. 456, 748 S.W.2d 666 (1988).

Scroggins' second contention that the trial court erred

in refusing to admonish the jury as to the admissibility of evidence of other crimes to prove character is based upon an insufficient objection. At trial, Mr. Scroggins failed to state specifically why the testimony should be disregarded. An objection must be specific enough to apprise the trial court of the specific error in question. *Terry* v. *State*, 309 Ark. 64, 826 S.W.2d 817 (1992).

## PRETRIAL DISCOVERY

Next, Mr. Scroggins contends that the State withheld evidence in violation of his due process rights as to: 1) bodymiked tape recording of Scroggins' second trip to Cains' residence at which time the drugs were alleged to have been delivered; 2) the Pope County Drug Task Force Manual; 3) the testing procedures utilized by the State Crime Lab for comparison by Scroggins' expert; 4) prior bad acts and promises of immunity and leniency made to Cains in exchange for his testimony.

When testimony is not disclosed pursuant to pretrial discovery procedures, the burden in on the appellant to establish that the omission was sufficient to undermine confidence in the outcome of the trial. *Orsini* v. *State*, 287 Ark. 456, 701 S.W.2d 114 (1985). The prosecutor's responsibility is to provide any information or materials that tend to negate the defendant's guilty in some way. A.R.Cr.P. Rule 17.1(d). The key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. Absent a showing of prejudice, we will not reverse. *Hall* v. *State*, 306 Ark. 329, 812 S.W.2d 608 (1991). Although Mr. Scroggins describes all of this material as "exculpatory," there was no showing that this evidence would have negated his guilt or that he was prejudiced by the State's failure to disclose.

For example, Mr. Scroggins wanted the tape of a bodymiked conversation between Cains and Scroggins allegedly recorded during drug transactions between the two men. Mr. Scroggins' attorney claimed that he could have used it at the suppression hearing to impeach Cains in order to prove that the two men were really talking about motorcycle parts rather than drugs. On the second day of trial, the prosecution surrendered the tape to Scroggins, and he did not use it at all. Accordingly, no proof was provided to the trial court that this tape was exculpatory in any way.

Mr. Scroggins also claims that he needed the Drug Task Force Manual in order to highlight the allegedly slipshod manner in which this drug buy occurred. As for alleged deals between authorities and Cains, Mr. Scroggins cross-examined Mr. Cains on this very issue. There has been no showing that failure to disclose this manual hampered Mr. Scroggins' cross-examination of Cains in any way.

Mr. Scroggins complains that discovery was violated by the prosecutor's failure to provide appellant with descriptions of the procedures used by the State Crime Lab in testing the methamphetamine seized from Cains' residence after the alleged drug buy between Scroggins and Cains. Mr. Scroggins requested that a sample of the drug be sent to defense's independent analyst in Georgia, and this request was granted. Apparently, Mr. Scroggins wanted the State to provide him with descriptions of all procedures used by the State Crime Lab so that his independent expert could follow these procedures and explain why they were not appropriate in his testimony at trial. However, the prosecutor refused claiming that he only had to provide the results of the tests performed by the State Crime Lab.

Here again, Mr. Scroggins has failed to show how he was prejudiced by the prosecution's failure to provide him with a description of these testing procedures. As such, this argument is not persuasive.

For his last discovery allegation, Mr. Scroggins contends that the state committed reversible error in failing to provide him with information concerning Cains' prior bad acts or promises of leniency made to Cains. As Scroggins has failed to show how he was prejudiced by these omissions, this too is a meritless argument. As the suppression hearing transcript indicates, Mr. Scroggins cross-examined Mr. Cains fully on these very topics. Although trial testimony indicated that Cains was told that his cooperation would be reported to the prosecutor, there was no evidence indicating that he was promised leniency.

## DIRECTED VERDICT FOR CODEFENDANT

Mr. Scroggins' next assignment of error is that the trial court erred in failing to direct a verdict for co-defendant, Mr. Hawkins because without the directed verdict, Mr. Hawkins could not be

called as Mr. Scroggins' witness.

■ Scroggins does not have standing to argue that a motion for directed verdict for Hawkins should have been granted. And, Hawkins has no grounds to appeal because he was found not guilty.

## LESSER INCLUDED CHARGE

Mr.Scroggins also contends that the trial court erred in refusing to give the jury an instruction on a lesser included offense. Although the methamphetamine sold to Cains weighed 91.900 grams, Mr. Scroggins asserts that because the drugs were only 10.2% pure, this amounted to less than 28 grams of *actual* methamphetamine, without any adulterants or diluents. Accordingly, says Mr. Scroggins, the jury should have been instructed that they could punish him for delivery of 28 grams rather than 91.900 grams.

■ Ark. Code Ann. § 50-64-401(a)(1)(i) (Supp. 1991) clearly provides that the punishment is to be determined by the **aggregate** weight of the drugs "including adulterants or diluents". Therefore, with adulterants and diluents, the methamphetamines sold to Cains have an aggregate weight of 91.900 grams, and the court's instructions to the jury were correct.

■ Mr. Scroggins also asserts that he should have received a second probable cause hearing because the first one was not recorded. He does not cite any authority to support this position; nor does he explain how he was prejudiced by the failure to record this hearing. Assignments of error unsupported by convincing argument or authority are not considered on appeal. *See Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 404 (1977).

## NEWLY DISCOVERED EVIDENCE

Scroggins also contends that after it was too late to file a motion for new trial, he discovered that one of the jurors, Austin Ledbetter, was the former father-in-law of one of the persons to whom Cains sold drugs and that the former daughter-in-law, Kelly Ledbetter, was mentioned by name during the trial.

Scroggins claims he should have been granted a new trial

because Kelly Ledbetter was one of the "victims" of Cains. However, Cains was not on trial. And, while Ms. Ledbetter may have been a buyer of Cains, she certainly was not victimized by him, at least not in the sense Mr. Scroggins implies. Once again, this argument is not supported by any authority. As such, we will not consider it on appeal. *Dixon, supra.*

## ALLEGATIONS OF MISTRIAL

Mr. Scroggins lists situations in which the court erred in denying his motion for mistrial. First, he claims a mistrial should have been granted when the State mentioned that Scroggins had previously sold drugs to Cains (alluding to a statement Cains made at the suppression hearing.). The court denied the motion, correctly, because these "prior bad acts" go towards proving that Scroggins was at Cains' home with the intent to sell drugs.

Secondly, he argues that a mistrial should have been granted when the State asked the chemist from the State Crime Lab whether Scroggins could have asked the chemist to have the purity of the drugs tested. As discussed earlier, the purity of the drugs is irrelevant because the gross weight includes diluents; thus a mistrial was not warranted here either.

And thirdly, Scroggins contends a mistrial should have been granted when the State asked questions of a witness about the conversation on the tape (of the bodymiked conversation between Cains and Scroggins). The judge denied the motion but told the witness to discuss what he saw not what he heard. No prejudice resulted so the trial court did not err in refusing to grant a mistrial. *See David* v. *State*, 295 Ark. 131, 748 S.W.2d 117 (1988).

The last mistrial argument involves the fact that the State did not provide the defense with the bodymiked tape of the second meeting between Scroggins and Cains. Again, Scroggins has not demonstrated any prejudice and the tape was not admitted into evidence at trial. Therefore, no mistrial was warranted.

Mr. Scroggins also argues that the trial court erred in admitting taped conversations of Cains and third parties. Although Mr. Scroggins objected to the tape initially, he agreed with the judge when the trial court said that he would admit the tape but admonish the jury that the tape had some transactions

not relevant to the case. Obviously, Mr. Scroggins cannot now complain when he agreed with the trial court's ruling. *See Key* v. *State*, 300 Ark. 66, 776 S.W.2d 820 (1989); *Gilbert* v. *State*, 277 Ark. 61, 639 S.W.2d 346 (1982).

## SPEEDY TRIAL

For his final argument, Mr. Scroggins contends that the State failed to give him a speedy trial. He was arrested on September 29, 1990 but not tried until January 27, 1992.

Delays resulting from continuances given at the request of the defendant are excludable in figuring the time for a speedy trial. A.R.Cr.P. Rule 28.3(c); *Matthews* v. *State*, 268 Ark. 484, 598 S.W.2d 58 (1980). The first order of continuance was filed May 28, 1991, and upon motion of the defendants, the case was continued from June 3, 1991, until September 16, 1991. At the hearing on this motion, counsel for Mr. Scroggins said that he wanted the continuance to investigate Mr. Cains' criminal record and to allow for independent testing of the drugs. The time was charged to the defense at their request. As counsel for Scroggins stated, "I think it's the State's fault for us having to ask for this continuance; but I would ask a continuance at this time charged to us."

Upon motion of the defendant, a second order of continuance was granted on October 15, 1991, continuing this case from October 30, 1991 until January 27, 1992. In his brief, Mr. Scroggins contends that the delays were not his fault because the prosecutor failed to cooperate with discovery requests.

It is true that once the appellant presents a prima facie case of violation of speedy trial, the burden shifts to the State to show that the delay is the result of the appellant's conduct or otherwise justified. *Meine* v. *State*, 309 Ark. 124, 827 S.W.2d 151 (1992). Here, however, the continuances were at the specific request of Mr. Scroggins and were properly documented of record. Therefore, the State has shown that the continuances were excludable, and accordingly, there is not a speedy trial violation. While Mr. Scroggins contends that the continuances resulted from the State's failure to comply with discovery, we have previously discussed and dismissed his discovery arguments.

Affirmed.