Bernard MARKS *v.* STATE of Arkansas

CR 08-472                                          289 S.W.3d 923

Supreme Court of Arkansas
Opinion delivered December 19, 2008

*Robinson & Associates, P.A.*, by: *Luke Zakrewski*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Bernard Marks appeals from his conviction for capital murder and his sentence to life imprisonment without parole. He asserts two points on appeal. We affirm.

Testimony at trial revealed that on the morning of July 5, 2004, Marks, Chris Claiborne, and Ricky Howard left the Three Gables nightclub together. Howard was driving the three men in a car he had borrowed. The three men arrived outside of the residence of Alvin Benjamin to find Michael Walker, the ultimate victim, standing in the front yard. The three men got out of the vehicle, and Marks and Claiborne began to beat Walker. Immediately after that, while Walker was lying unconscious in the road, Marks got in the borrowed vehicle and proceeded to run over Walker. In the early morning hours of July 5, 2004, Walker was taken to the emergency room of the Jefferson Regional Medical Center in Pine Bluff. Walker was severely injured and subsequently died of his injuries. Marks was later arrested and charged with capital murder.

At Marks's trial, Ricky Howard was called as a witness for the State. On direct examination by the prosecutor, he testified that he saw Marks pushing, hitting, and kicking Walker, and that Marks stated that he was going to run Walker over. Howard testified that he then observed Marks get into the car and start to move it and that the car ran over Walker. On cross-examination, Howard testified that he fled the scene when Marks got in the car. During the prosecutor's redirect examination, Howard testified that he did not actually see the car run over Walker, but he heard a noise — "bl-bloom, bl-bloom, bl-bloom." When the prosecutor asked Howard what the noise was, defense counsel objected: "He said he heard it. He didn't say he saw it." The judge overruled the objection and said, "If he knows, he can answer it. If not, he can respond accordingly." The prosecutor questioned, "What-what happened to a body," and Howard stated "Ran over." At the conclusion of the trial, Marks was convicted of capital murder and sentenced accordingly.

For his first point on appeal, Marks contends that the circuit judge erred by overruling his objection to Howard's testimony that the sound he heard was Marks driving over Walker. Marks claims that Howard lacked the requisite personal knowledge to testify under Arkansas Rule of Evidence 602. He claims that "the record lacks any basis for a conclusion that Howard had sufficient knowledge to distinguish the sound of a vehicle running over a

human body as opposed to some other similar object." The State responds that Marks has mischaracterized Rule 701 under the Arkansas Rules of Evidence as a Rule 602 objection. The State adds that Marks's true argument on appeal is that Howard was not qualified as a lay witness under Rule 701 to make the inference that the sound he heard was that of a car driving over a human body. The State claims that the circuit judge did not abuse his discretion because Howard's opinion testimony was rationally based on his perception and the surrounding circumstances and was helpful to a clear understanding of the determination of whether Marks was driving the car that ran over Walker.[1] Additionally, the State argues that Marks cannot show prejudice because the testimony of other witnesses established that Marks ran over Walker with the car.

Trial courts have broad discretion in deciding evidentiary issues, and their decisions are not reversed absent an abuse of discretion. *Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003). This court will not reverse an evidentiary decision by the trial court in the absence of prejudice. *McFerrin v. State*, 344 Ark. 671, 42 S.W.3d 529 (2001).

As already noted, Marks first contends that Howard's testimony was inadmissible under Arkansas Rule of Evidence 602. Rule 602 provides, in pertinent part, as follows:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.

Ark. R. Evid. 602.

In the case before us, sufficient evidence was introduced at trial to support a finding that Howard had personal knowledge of the matter to which he testified. It was undisputed that Howard was present at the scene of the crime. He testified that he witnessed Marks beating Walker, that he heard Marks state that he was going to run over Walker, and that he saw Marks get into the car and begin driving. Finally, immediately after running from the scene, he heard the sound — "bl-bloom, bl-bloom, bl-bloom." Howard, without question, had personal knowledge of

---

[1] The fact that Walker had been run over with a car was undisputed at trial.

the events to which he testified. The circuit judge did not err in permitting the testimony under Rule 602.

Rule 701, which the State maintains is the appropriate rule for our analysis, reads:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are
>
> (1) Rationally based on the perception of the witness; and
>
> (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

Ark. R. Evid. 701.

We agree with the State that Rule 701 governs this case. In *Carton v. Missouri Pacific Railroad Co.*, 303 Ark. 568, 798 S.W.2d 674 (1990), we set out a three-prong test for determining admissibility under Rule 701. First, the testimony must pass the "personal knowledge" test of Rule 602. *Id.* Second, it must be rationally based, that is, the opinion must be one that a normal person would form on the basis of the facts observed. *Id.* Finally, the opinion must meet the "helpful" test. *Id.*

The facts in this case are these:

- Marks, Howard, and Claiborne left a club together on the morning of July 5, 2005. The three men went to the home of Alvin Benjamin.

- Upon arriving at Benjamin's house, Howard observed Marks and Claiborne assaulting the victim, Michael Walker.

- Howard then heard Marks state that he was going to run Walker over, and saw Marks get into a car and begin driving.

- When Marks started to move the car, Howard turned and ran from the scene. While running away, Howard heard the sound — "bl-bloom, bl-bloom, bl-bloom."

- At trial, Howard testified that the "bl-bloom, bl-bloom" sound was the sound of Marks running over Walker's body.

Marks asserts that the trial judge abused his discretion in allowing Howard to testify that the tell-tale bumping sound was the sound of Marks driving over Walker because Howard did not actually see what caused the sound. He contends that Howard lacked sufficient knowledge to distinguish the sound of a vehicle running over a human body as opposed to another object because there was no evidence that Howard had seen or heard a vehicle run over a human body on a prior occasion.

■ Marks is incorrect. For the first prong, under the *Carton* test, Howard's testimony concerning Marks driving over Walker was based on his personal knowledge of Marks's actions at the scene of the crime as already noted in the opinion. *See* Ark. R. Evid. 602 ("Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself."). This easily satisfies the first prong of the Rule 701 analysis.

■ Turning to the second prong, under *Carton*, Howard's opinion that the bumping sound he heard was Marks driving a car over Walker's body was formed on the basis of the facts Howard observed at the scene of the crime and his perception of what happened to Walker. It is not necessary that Howard actually heard previously the exact sound a car makes driving over a human body. Rather, it is sufficient that his opinion and inference were ones that a normal person would form on the basis of the facts he observed and what he heard. In *Felty v. State*, 306 Ark. 634, 816 S.W.2d 872 (1991), we stated that opinion testimony by lay witnesses is admissible "in observation of everyday occurrences, or matters within the common experience of most persons." The common experience of most persons when coupled with the facts Howard observed and what he heard at the scene of the crime reasonably leads to the inference Howard made in regard to the source of the sound.

■ Rule 701(1) speaks in terms of "perception" of the witness. "Perception" is not limited to what is actually seen, as Marks would have it. Rather, "perception" is defined in *Black's Law Dictionary* as "[a]n observation, awareness *or* realization, usually based on physical sensation or experience; appreciation or cognition." *Black's Law Dictionary* 1172 (8th ed. 2004) (emphasis added). Here, Howard saw the fight, heard the threat, saw Marks get into the car and start driving toward Walker, and then heard

the sound of the car running over the body. Based on this, he could certainly form his opinion based on perception that Marks, in fact, ran over Walker.

■ Finally, Howard's opinion testimony was helpful to a determination of a fact in issue, which is the third prong. That fact was whether Marks was the driver of the car that ran over Walker's body. Because Howard's opinion testimony satisfies the three-prong analysis for determining admissibility under Rule 701, there was no abuse of discretion by the circuit judge in allowing it into evidence.

Marks next urges that the circuit judge erred by failing to correct, sua sponte, defense counsel's misstatement of the law regarding the burden of proof during his opening statement. At trial, Marks's counsel reserved his opening statement until after the State had presented its case-in-chief. After the prosecution rested, Marks's counsel began his opening statement by saying, "If you will recall, yesterday morning the judge told you that I would reserve my opening statement until such time as the burden shifts, or at least until the close of the State's case. The responsibility from this point on is for the defendant to move forward." Defense counsel failed to raise an objection to his own statement.

Marks recognizes that this court does not recognize "plain-error" and that the contemporaneous-objection rule has not been complied with here. Marks, nevertheless, asks this court to expand the recognized *Wicks* exceptions to the contemporaneous-objection rule to include a statement that the burden of proof in a criminal case has shifted to the defendant, when made by the defendant's own trial counsel, even though defense counsel did not object to his own statement.

Marks is correct that Arkansas does not recognize the plain-error rule, under which plain errors affecting substantial rights may be reviewed on appeal although they were not brought to the attention of the trial judge. *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). It is a fundamental rule of this court that an argument for reversal will not be considered absent an appropriate objection in the trial court. *Id.* Four exceptions are recognized: (1) when a trial court fails to bring to a jury's attention a matter essential to the consideration of the death penalty; (2) when an error is made by a trial judge himself or herself at a time when defense counsel has no knowledge of the error and thus no opportunity to object; (3) when the serious nature of an error

obligates the trial judge to intervene, without objection, either by admonition to the jury or the declaration of a mistrial; and (4) when an evidentiary ruling affects substantial rights. *Id.* Our case law is clear that *Wicks* presents only narrow exceptions that are to be rarely applied. *Anderson v. State*, 353 Ark. 384, 398, 108 S.W.3d 592, 600 (2003).

■ Admittedly, the facts involved in this point are somewhat bizarre because Marks argues that his defense counsel erred in his statement, did not object to his own error, but that the circuit judge should have stepped in and corrected it. It is, of course, a fundamental principle of criminal law that the State has the burden of proving the defendant guilty beyond a reasonable doubt. Marks asks this court to determine whether a statement indicating that the burden of proof in a criminal case has shifted to the defendant, when made by the defendant's own counsel, implicates the third *Wicks* exception. Marks's argument presupposes that defense counsel incorrectly stated the burden of proof. We are not convinced that he did. Defense counsel started to say that he had reserved his opening statement until the burden shifted, but then quickly corrected himself to say until the prosecution rested. He then said that "the responsibility from this point on is for the defendant to move forward." Nothing in these statements impressed upon the jury the idea that the defendant had the burden of proving his innocence. Rather, the statements referred to the defendant's ability to proceed with the presentation of defense evidence, if the defendant so desired.

In like situations, this court will defer to the superior position of the circuit judge to control and manage the arguments of counsel. *Anderson*, 353 Ark. at 405-06, 108 S.W.3d at 606. We note, in addition, that the correct burden of proof was stated to the jury in the closing argument of counsel for both parties and in the circuit judge's final instructions. This court will not reverse the action of a trial court in matters pertaining to its control, supervision, and determination of the propriety of arguments of counsel in the absence of a manifest abuse of discretion. *Id.* at 395, 108 S.W.3d at 598. We conclude that the defense counsel's statements were not so flagrantly incorrect as to compel a finding that the circuit judge's failure to intervene, sua sponte, and instruct the jury as to the law was a manifest abuse of discretion.

The record in this case has been reviewed in accordance with Arkansas Supreme Court Rule 4-3(h), and no reversible error has been found.

Affirmed.

CORBIN and DANIELSON, JJ., concur.

PAUL E. DANIELSON, Justice, concurring. I, too, affirm Marks's judgment and conviction because I cannot say that the admission of Howard's testimony constituted reversible error. However, I do so because, despite the circuit court's abuse of discretion in admitting the testimony, that error was harmless.

Here, a review of the record reveals that Howard testified to the following on direct examination: (1) that when Marks finished hitting Walker, Marks said that he was "going to run [Walker] over"; (2) that Marks then"[j]umped in the car"; (3) that Marks moved the car; (4) that the car ran over Walker; and (5) that he then left and went home. However, it was revealed on cross-examination that Howard did not see Marks run over Walker.[1] Howard testified that "[w]hen [Marks] jumped in the car, that's when I left." He then confirmed that he "ran off before this incident." Following this testimony, on redirect examination, Howard clarified his testimony, stating that he did not see Marks run over Walker, but heard a noise. In addition, Howard testified that he saw the car driving after him, which Marks was driving.

With respect to Rule 701, we have held that the rule today is not a rule against conclusions, but is a rule conditionally favoring them. *See Moore v. State*, 362 Ark. 70, 207 S.W.3d 493 (2005). Here, the majority attempts to interpret and construe the rule; however, we have already done so, and it is our prior interpretation that renders the admission of Howard's testimony erroneous.

In *Felty v. State*, 306 Ark. 634, 816 S.W.2d 872 (1991), we examined Felty's argument that the circuit court erred in admitting the testimony of two lay witnesses because their statements were conclusions that could not be supported by personal knowledge. While ignored by the majority, this court specifically discussed the rule and the testimony it contemplates:

---

[1] It is important to note that it was not until cross-examination that Howard testified that he did not actually see Marks run over Walker. Thus, there is no issue regarding preservation for our review, as Marks objected at the first opportunity.

[The rule] provides that a lay witness may give an opinion with two (2) limitations. Limitation (1) is the requirement of firsthand knowledge or observation. Limitation (2) is phrased in terms of requiring testimony to be helpful in resolving issues. Witnesses often find difficulty in expressing themselves in language which is not an opinion or conclusion. For example, if a witness is asked, "What kind of day was it?" he might respond, "Beautiful." It would be an admissible opinion. He would not have to state it was a clear skied, sunny, 72 degree spring day with a slight breeze. The witness can respond in everyday language which includes his conclusion about the type of day. However, if attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the Rule. See Advisory Committee's Notes to Federal Rule 701.

*In sum, opinion testimony by lay witnesses is allowed in observation of everyday occurrences, or matters within the common experience of most persons. Statements by eyewitnesses that the victim was "scared" and "trying to get away" easily fit within the limitations imposed on lay witness opinion.*

306 Ark. at 639–40, 816 S.W.2d at 875 (emphasis added). Under this court's interpretation of the rule, it is clear that Howard's testimony did not meet the requirements of the rule, as he lacked firsthand knowledge nor was his opinion, that Walker was run over, rationally based on his perception of an everyday occurrence.

According to *Felty*, Howard's testimony was only admissible, pursuant to Rule 701, if it was rationally based on an observation of everyday occurrences or a matter within the common experience of most persons. I simply cannot agree that the sound "bl-bloom, bl-bloom" is an everyday occurrence or within the common experience of most persons, as is suggested by the majority's analysis. For Howard to be permitted to testify that Marks did in fact run over Walker, when Howard did not witness such, was simply an abuse of discretion by the circuit court.

In sum, Howard's testimony, here, "ran over," had to be rationally based on a perception of an everyday occurrence. It is absurd, and clearly contrary to our case law, to suggest that an opinion based on the sound of "bl-bloom, bl-bloom" is the equivalent of an opinion regarding the weather or one's impres-

sion of another, as set forth in *Felty*.[2] Indeed, Howard's statement that Marks ran over Walker is precisely the type of meaningless assertion amounting "to little more than choosing up sides" that the rule requires be excluded. Howard lacked personal knowledge, and further, his testimony was not rationally based on a perception of an everyday occurrence. For that reason, the circuit court abused its discretion in allowing Howard's testimony.

That being said, Howard's testimony was merely cumulative to that of Bobbie Riley and, further, the medical examiner. Riley testified that Marks and Claiborne beat and kicked Walker, and, afterward, Marks stated that he was going to run Walker over. She further stated that before Marks ran Walker over, he pulled Walker's body to the middle of the road, behind the car, then started the car and ran over Walker. In addition, the medical examiner testified that Walker's body surface showed "road rash," which was indicative of an individual being run over by a motor vehicle.

We have repeatedly held that prejudice is not presumed and that no prejudice results where the evidence erroneously admitted was merely cumulative. *See Wright v. State*, 368 Ark. 629, 249 S.W.3d 133 (2007). Moreover, we do not reverse for harmless error in the admission of evidence. *See id.* Because the admission of Howard's testimony was harmless due to its cumulative nature, I would affirm on this point. I, therefore, concur.

CORBIN, J., joins.

---

[2] Such a sound, as described, could just as easily been a blown tire or a car driving over the curb. Whatever inference was to be drawn from Howard's testimony, prior to his statement that Marks ran over Walker, was within the jury's province.