Richard G. MARKGRAF, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7432.

Court of Appeals of Alaska.

Nov. 9, 2000.

James E. McLain, Law Offices of William R. Satterberg, Jr., Fairbanks, for Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and
MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Richard G. Markgraf was facing trial for theft. Two of his co-workers, Michael Salzman and Porter Gilbert, were subpoenaed to testify as government witnesses at Markgraf's trial. Markgraf attempted to dissuade these two men from testifying against him. Markgraf told Salzman, "For an 8–ball of cocaine, I could get somebody to assassinate you." Markgraf bragged to Gilbert that he had previously "gotten away" with a hit-and-run, and he warned Gilbert that "it [wasn't] safe to ride [your motorcycle] in town with somebody that doesn't like [you]." Based on this conduct, Markgraf was convicted of two counts of interference with official proceedings.[1]

Markgraf challenges his convictions on two grounds. First, Markgraf asserts that the trial judge committed error by allowing a police officer to testify that, when she interviewed Salzman, he appeared to be fearful. Second, Markgraf argues that the trial judge should have instructed the jury to distrust Salzman's testimony (*i.e.*, view it with caution) because Salzman received money from the Crime Stoppers program for providing a tip in the theft. For the reasons explained here, we reject both of Markgraf's contentions and we affirm his convictions.

*The police officer's testimony concerning Salzman's apparent mental state*

■ Fairbanks Police Officer Margaret I. Sullivan was assigned to investigate Markgraf's threats against Salzman and Gilbert, and she conducted interviews with both men. At Markgraf's trial, Officer Sullivan was asked to describe Salzman's demeanor during his interview:

*Prosecutor:* Now, ma'am, Mr. Salzman has testified. We don't need to go in to the substance of what he told you, but I would like you to talk about the circumstances of your interview and his demeanor when you spoke to him.

*Sullivan:* I was asking him [about] the type of threats [that] he was receiving or had received[,] and his demeanor was—he was nervous. He spoke in a low voice. He told me he was scared and acted as if, you know, he was. He was kind of looking over his shoulder, making sure that Mr. Markgraf wasn't going ... to come in [through] the door.

After hearing Sullivan's answer, Markgraf's attorney objected that this testimony was inadmissible hearsay. The trial judge, Superior Court Judge Charles D. Pengilly, replied that Sullivan had not testified to anything that Salzman said, but had merely described his demeanor. The defense attorney responded that he did not object to Sullivan's description of Salzman's physical demeanor in the sense of "facial features and things like that", but he objected to Sullivan's characterization of that demeanor—the officer's inferences concerning Salzman's mental state. Judge Pengilly overruled Markgraf's objection.

On appeal, Markgraf renews his hearsay objection to Officer Sullivan's description of Salzman's mental state. Markgraf argues that Salzman's demeanor was a "statement" for purposes of the hearsay rule—that Salzman's facial expressions, his tone of voice, and his other fearful actions amounted to "nonverbal conduct ... intended ... as an assertion".[2]

Salzman's demeanor may have demonstrated or "communicated" his fear to Officer Sullivan, but the question for hearsay purposes is whether Salzman consciously *intended* his demeanor to be an assertion about his mental state:

Prior to raising their umbrellas, people do not say to themselves in soliloquy form, "It is raining," nor does the motorist go forward on the green light only after making

---

1. AS 11.56.510(a).

2. Alaska Evidence Rule 801(a)(2).

an inward assertion, "The light is green." The conduct offered in the one instance to prove it was raining and in the other that the light was green involves *no intent to communicate the fact sought to be proved* [.] . . . True, the threshold question whether communication was intended may on occasion present difficulty, yet the probabilities against intent are generally so great as to justify putting the burden of establishing it upon the party urging the hearsay objection.

John W. Strong et al., *McCormick on Evidence* (5th ed.1999), § 250, Vol. 2, pp. 108–09 (footnotes omitted) (emphasis added).

Courts routinely hold that testimony concerning a person's apparent mental state—testimony that the person appeared angry, fearful, agitated, happy, or excited—is not hearsay. For example, in *Cole v. United States*[3], with the defendant on trial for robbery by intimidation, the government offered testimony that a bank teller appeared distraught and upset after the robbery. This testimony was held not to be hearsay.[4] In *Partin v. Commonwealth*[5], the court rejected a hearsay objection to testimony that the victim exhibited signs of fear toward the defendant.[6] Similarly, in *Layman v. State*[7], the court rejected a hearsay objection to testimony that the victim was fearful and began to cry.[8]

In this case, leaving aside Salzman's verbal assertion that he was scared (which we discuss in the next paragraph), there is nothing to indicate that Salzman's facial expressions, his nervousness, his low voice, or his repeated act of looking over his shoulder were intended to be assertions about his mental state. Accordingly, Judge Pengilly properly overruled Markgraf's hearsay objection to Sullivan's description of Salzman's demeanor.

Markgraf also argues that the hearsay rule barred Sullivan from testifying that Salzman told her "he was scared". This testimony was offered to prove the truth of the matter asserted, and so it was hearsay. However, Evidence Rule 803(3) authorizes the admission of hearsay when the out-of-court statement it is offered to prove "the declarant's then[-]existing state of mind [or] emotion". Accordingly, this part of Sullivan's testimony was also admissible.

Markgraf raises another objection on appeal: he contends that the State failed to establish that Sullivan possessed the expertise to draw any conclusion about Salzman's mental state from Salzman's demeanor. In his brief, Markgraf asserts that Judge Pengilly apparently allowed Sullivan to testify "as a mind reader".

This argument was not preserved in the trial court. At trial, Markgraf objected only on hearsay grounds. Moreover, Markgraf's argument is meritless.

Lay witnesses (*i.e.*, witnesses with no psychological expertise) are generally allowed to testify about another person's apparent mental state if the witnesses' conclusions are "rationally based on [their] perception . . . [and are] helpful to a clear understanding of [their] testimony or the determination of a fact in issue."[9] Thus, the Alaska Supreme Court has held that a lay witness may offer an opinion as to whether another person appeared to be intoxicated.[10] And this court, in *Jackson v. State*[11], ruled that a mother's "lifelong relationship to [her daughter] and intimate knowledge of her daughter's condition" made her qualified to give lay testimony concerning the extent of her daughter's mental retardation.[12] Compare *Morrell v. State*, where the supreme court held that a lay witness could properly be precluded from

3. 327 F.2d 360 (9th Cir.1964).

4. *See id.* at 361.

5. 918 S.W.2d 219 (Ky.1996).

6. *See id.* at 221–22.

7. 652 So.2d 373 (Fla.1995).

8. *See id.* at 375.

9. Alaska Evidence Rule 701.

10. *See Loof v. Sanders,* 686 P.2d 1205, 1213 (Alaska 1984).

11. 890 P.2d 587 (Alaska App.1995).

12. *Id.* at 590.

expressing an opinion concerning the *cause* of another person's mental state.[13]

■ Although Alaska cases have not specifically addressed the question of whether a lay witness may offer an opinion as to whether another person appeared scared, courts from other states have allowed such testimony.[14] We agree with these courts that, so long as the witness's conclusion is rationally based on their perception and is helpful to a clear understanding of their testimony (the test established in Evidence Rule 701), a lay witness may testify that another person seemed scared. Judge Pengilly therefore properly overruled Markgraf's objection to Sullivan's testimony.

*Markgraf's request for a jury instruction directing the jurors to view Salzman's testimony with caution*

As explained at the beginning of this opinion, Markgraf threatened Salzman and Gilbert because they were going to appear as witnesses at his theft trial. Markgraf was charged with theft by receiving: he had purchased a stolen computer even though he had a "pretty good idea" that it was stolen. Markgraf brought the computer to work, where Salzman (one of Markgraf's co-workers) saw it.

The police were alerted to Markgraf's crime because Salzman reported the suspected theft to the "Crime Stoppers" hotline. Salzman later agreed to testify at Markgraf's theft trial. (That trial never occurred; Markgraf ultimately pleaded no contest to the theft charge.)

Salzman did, however, testify in the present case—the interference-with-official-proceedings trial. During his testimony, Salzman stated that he received a $600 reward from Crime Stoppers for his assistance in the underlying theft prosecution.

Because Salzman received money for his cooperation in the theft prosecution, Markgraf asked Judge Pengilly to instruct the jury that Salzman was an "informer" (a witness "who provides testimony against a defendant for pay"), and thus his testimony should be viewed with caution. Judge Pengilly declined to give this instruction. He ruled that, although Salzman might have been an "informer" for purposes of the earlier theft prosecution, there was no evidence that Salzman had received money or any other reward for cooperating in the interference-with-official-proceedings prosecution—a case in which Salzman was himself a victim.

Markgraf concedes that Salzman was not paid for his cooperation in the present case. He argues, however, that the earlier theft case is so intimately connected with the present case that Salzman should be treated as an informer in both cases.

■ The informer instruction is designed to alert the jury to pay special attention to the testimony of persons who have a financial incentive to testify against the defendant. Even though there is a factual connection between Markgraf's theft case and the present charge of interference with official proceedings, the pertinent task is to identify Salzman's motivation for testifying against Markgraf at the interference-with-official-proceedings trial. There was no evidence that Salzman had received or would receive a reward for testifying against Markgraf at the interference trial. Salzman's motive for testifying is obvious from the charge itself: he was one of the victims of Markgraf's threats. We therefore conclude that Judge Pengilly could properly refuse to give the requested "informer" instruction.

We note, moreover, that although the jury did not receive an "informer" instruction, they did hear Salzman's testimony that he had been paid for his cooperation in the underlying theft case. The jurors received the standard instruction for determining the credibility of witnesses. In particular, they were told to consider "any motive the witness might have not to tell the truth, [and] any

---

**13.** 575 P.2d 1200, 1204–05 (Alaska 1978).

**14.** *See State v. Stojetz*, 84 Ohio St.3d 452, 705 N.E.2d 329, 340 (1999) (witness allowed to testify that the victim was "scared" and "not able to think"), *cert. denied*, — U.S. —, 120 S.Ct. 455,

145 L.Ed.2d 376 (1999); *Felty v. State*, 306 Ark. 634, 816 S.W.2d 872, 875 (1991) (witness allowed to testify that a rape victim was "scared" and "trying to get away").

interest the witness might have in the outcome of the case." Because the jury was aware that Salzman had acted as a paid informant in the underlying theft case, they could take this fact into account when assessing the credibility of his testimony.

*Conclusion*

The judgement of the superior court is AFFIRMED.