The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 12, 2018

## 2018COA95

## No. 15CA1176, People v. Lujan — Constitutional Law — Sixth Amendment — Speedy and Public Trial

A division of the court of appeals considers whether the

closure of a courtroom — excluding the public, the parties, and

counsel — to reread instructions to the jury during deliberation

violates a defendant's Sixth Amendment right to a public trial.  The

division concludes that the defendant's right to a public trial was

violated and that the violation was not trivial because two of the

purposes of the right to a public trial — (1) "to ensure a fair trial"

and (2) "to remind the prosecutor and judge of their responsibility

to the accused and the importance of their functions" — were

compromised by the empty courtroom.  *Peterson v. Williams*, 85

F.3d 39, 43 (2d Cir. 1996).  Because the violation of a criminal

defendant's right to a public trial constitutes structural error, the division reverses and remands for a new trial.

COLORADO COURT OF APPEALS                          **2018COA95**

Court of Appeals No. 15CA1176
Boulder County District Court No. 13CR1829
Honorable Andrew R. Macdonald, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Abel Lujan,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE RICHMAN
Webb and Fox, JJ., concur

Announced July 12, 2018

Cynthia H. Coffman, Attorney General, Brittany Limes, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Haddon, Morgan and Foreman, P.C., Adam Mueller, Denver, Colorado, for
Defendant-Appellant

¶ 1    Defendant, Abel Lujan, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree murder. Because the trial court erroneously ordered the courtroom to be completely cleared when it reread instructions to the jury during deliberations, over defendant's objection, we must reverse and remand for a new trial.

## I. Background

¶ 2    The victim, defendant's live-in girlfriend, was beaten, strangled, and left on the ground outside a friend's apartment in 1999. In 2013, the People charged defendant with first degree murder. On the first day of trial, defendant conceded that he was responsible for the victim's death, but he argued that he was guilty only of reckless manslaughter.

¶ 3    Over defendant's objection that the evidence violated CRE 404(b), defendant's ex-wife and a former girlfriend testified about defendant's behavior toward them, including that he had hit and tried to strangle or suffocate them. For each witness's testimony, the trial court gave a contemporaneous limiting instruction. However, at the close of evidence, the jury was instructed only generally that "[t]he Court admitted certain evidence for a limited

1

purpose. You are instructed that you cannot consider that evidence except for the limited purpose I told you about when it was admitted."

¶ 4 During deliberations, the jury submitted two questions to the trial court, one of which said: "Please write down the statement for the limited use statement [sic] on the testimonies of [defendant's ex-wife and former girlfriend]." Defense counsel objected to sending a written version of the contemporaneous instructions to the jury room if it did not contain additional language explicitly stating that the jury could not use the testimonies as evidence of propensity — language that the trial court had already rejected. The prosecutor suggested that the jury be brought back to the courtroom, where the judge could read the written version of the contemporaneous instructions. After a lengthy discussion, the court gave defense counsel a choice between (1) sending the jury a written version of the limiting instructions given contemporaneously with the testimony and (2) clearing the courtroom while it reread the contemporaneous limiting instructions aloud to the jury. Counsel indicated that he preferred reading the instructions to the jury, but he objected to excluding everyone from the courtroom. The court

responded that it could "never bring the jury out in front of the parties" during deliberations and that counsel did not have to worry about it because the proceeding would be on the record.

¶ 5 Ultimately, defense counsel asked the court to read the instructions aloud and to note that "we are not in the courtroom, . . . and we are allowed to be." Counsel also requested that the jury be told why the parties were not present, and the judge responded "of course."

¶ 6 With the courtroom empty except for the jury, the bailiff, and the court reporter, the trial court said, "All right. Good morning, ladies and gentlemen. I'm going to read to you the instructions I read contemporaneous[ly] with the testimony of [defendant's ex-girlfriend and his ex-wife]." Then the court reread the instructions directing that the testimony from each witness could be considered only to show motive, intent, or common plan. Finally, it said, "That — those are the instructions. Okay. So thank you."

¶ 7 The jury found defendant guilty of second degree (knowing) murder.

¶ 8 On appeal, defendant contends that this conviction must be reversed because (1) closure of the courtroom to read limiting

instructions violated his right to a public trial and his right to be present and (2) the trial court made three erroneous evidentiary decisions. We agree with defendant's contention regarding a public trial and, because we conclude that the error is structural, we do not address his contention that his right to be present was violated, as a violation of that right is not structural error. However, we address his evidentiary contentions because they might arise on remand.

## II. Public Trial

¶ 9     A criminal defendant's right to a public trial is guaranteed by both the United States and Colorado Constitutions. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. When the trial court erroneously deprives a defendant of this right, the error is structural and "require[s] automatic reversal without individualized analysis of how the error impairs the reliability of the judgment of conviction." *Hagos v. People*, 2012 CO 63, ¶ 10; *see Stackhouse v. People*, 2015 CO 48, ¶ 7. A violation of the right to a public trial is not amenable to a harmless error analysis because "the effects of the error are simply too hard to measure." *Weaver v. Massachusetts*, 582 U.S. ___, ___, 137 S. Ct. 1899, 1908 (2017); *see*

*Waller v. Georgia*, 467 U.S. 39, 49 n.9 (1984) (noting that it would be impossible to demonstrate the prejudicial effect of the violation of a criminal defendant's right to a public trial).

¶ 10    A trial court's decision to completely close a criminal courtroom will not violate a defendant's public trial right if four requirements, articulated in *Waller*, are met: (1) "the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced"; (2) "the closure must be no broader than necessary to protect that interest"; (3) "the trial court must consider reasonable alternatives to closing the proceeding"; and (4) "[the trial court] must make findings adequate to support the closure."  467 U.S. at 48; *accord People v. Hassen*, 2015 CO 49, ¶ 9.

¶ 11    Here, the trial court decided sua sponte to exclude all but the jury, the bailiff, the reporter, and itself from the courtroom, advancing the bare assertion that it could never bring the jury in front of parties during deliberations.  The court's statement is contrary to proper court practices that place the jury and parties together during deliberations, such as the reading of an *Allen* instruction or the presentation of trial exhibits.  *See People v. Payne*, 2014 COA 81, ¶20 ("[D]efendant had a constitutional right to

5

be present while the trial court read the modified *Allen* instruction in open court . . . ."); *see also DeBella v. People*, 233 P.3d 664, 669 (Colo. 2010) (holding that a court may require that a video be viewed in open court rather than give a jury unfettered access during deliberations).  And the court gave no reason for excluding the public.

¶ 12     Thus, no overriding interest was articulated.  The closure was exceedingly broad.  And the record reflects that, because defendant chose to have the instruction read aloud, the court rejected the reasonable alternative of sending written instructions to the jury, but made no findings to justify the total closure.  Under these circumstances, the closure was not justified.  *See, e.g., Presley v. Georgia*, 558 U.S. 209, 216 (2010) (reversing the defendant's conviction because the trial court did not consider all reasonable alternatives to closure, "and that is all this Court needs to decide").

¶ 13     The People do not argue that the *Waller* elements were met. Instead, they urge us to affirm the conviction, notwithstanding the unjustified closure, because the exclusion was "trivial" and did not violate defendant's Sixth Amendment right.  *See Waller*, 467 U.S. at 50 ("[T]he remedy should be appropriate to the violation.").  They

6

argue that no Sixth Amendment violation occurred because the closure was brief and transcribed, and the court only repeated the instructions presented during the public portion of the trial.

¶ 14    The triviality standard, first recognized in the Second Circuit, follows the rationale that not every deprivation in a structural category constitutes a constitutional violation or requires reversal of the conviction.  *See Gibbons v. Savage*, 555 F.3d 112, 120 (2d Cir. 2009).  When the purposes of the right to a public trial — (1) "to ensure a fair trial"; (2) "to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions"; (3) "to encourage witnesses to come forward"; and (4) "to discourage perjury" — are not compromised, no Sixth Amendment violation occurs.  *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir. 1996).

¶ 15    The triviality standard has not been adopted in Colorado, although our supreme court has considered it.  *See Hassen*, ¶¶ 15, 17.  However, the Tenth Circuit has recognized that a "brief and inadvertent closing of . . . the courtroom . . . [does] not violate the Sixth Amendment."  *United States v. Al-Smadi*, 15 F.3d 153, 154-55 (10th Cir. 1994).  This position appears to be the majority view among courts that have considered this standard.  *See* Kristin

7

Saetveit, Note, *Close Calls: Defining Courtroom Closures Under the Sixth Amendment*, 68 Stan. L. Rev. 897, 916 (2016).

¶ 16    We need not pick a side because we conclude that even if we were to adopt the triviality standard, the closure here was not trivial. Though the closure was brief, it completely excluded the public, the attorneys, and defendant from an interaction between the court and the jury concerning a matter of law. The closure thus compromised two purposes of the right to a public trial — because no member of the public was present, the public could not (1) see that the defendant was tried fairly, or (2) "remind the . . . [court] of [its] responsibility to the accused and the importance of [its] function[]." *Peterson*, 85 F.3d at 43. To ensure a fair trial, the transparency of the proceedings must extend not only to the words spoken, but also to the presence and the demeanor of the participants. When the courtroom is closed, their demeanor is hidden.

¶ 17    The People's cited cases, in which courts found no violation of the Sixth Amendment because closures of the courtroom were inadvertent, partial, or necessitated by administrative concerns, do not persuade us that the courtroom closure here could be

considered trivial. *See United States v. Perry*, 479 F.3d 885, 890 (D.C. Cir. 2007) (partial); *United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003) (administrative); *Braun v. Powell*, 227 F.3d 908, 918 (7th Cir. 2000) (partial); *Al-Smadi*, 15 F.3d at 154 (inadvertent); *State v. Lindsey*, 632 N.W.2d 652, 660 (Minn. 2001) (partial). None of these three characteristics was present here.

¶ 18    The People suggest that, if we do not affirm, we should remand the case to the trial court for a hearing on the *Waller* elements. But the record clearly demonstrates that the elements were not met, and we decline to waste judicial resources on remand. *See Hassen*, ¶ 12; *People in Interest of G.B.*, 2018 COA 77, ¶ 52.

¶ 19    Because the closure of the courtroom was total, intentional, and unjustified, we conclude that defendant's Sixth Amendment right was violated. Thus, we are compelled to reverse his conviction and remand the case for a new trial. *See Weaver*, 582 U.S. at ___, 137 S. Ct. at 1910 ("[I]n the case of a structural error where there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to 'automatic reversal' regardless of the error's actual 'effect on the outcome.'" (quoting *Neder v. United States*, 527 U.S. 1, 7 (1999))).

## III. Evidentiary Rulings

¶ 20     Defendant also contends that the court committed three evidentiary errors. Because these issues may arise on remand, we briefly address them.

¶ 21     "A trial court has broad discretion in ruling on the admissibility of evidence." *People v. Beilke*, 232 P.3d 146, 149 (Colo. App. 2009). A trial court thus abuses its discretion only when its evidentiary ruling is manifestly arbitrary, unreasonable, unfair, or is based on a misunderstanding or misapplication of the law. *People v. Thompson*, 2017 COA 56, ¶ 91.

¶ 22     Evidence is relevant if it has any tendency to make the existence of a fact of consequence more or less probable. CRE 401. All relevant evidence is admissible, except that proscribed by rule or law. CRE 402. CRE 403 permits exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, but because Rule 403 strongly favors admissibility, we afford evidence "the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected." *People v. Gibbens*, 905 P.2d

604, 607 (Colo. 1995); *People v. James*, 117 P.3d 91, 94 (Colo. App. 2004).

### A. Exclusion of Evidence that Defendant Had Been Upset

¶ 23    A law enforcement officer testified for the People that in all of their interactions, defendant had never seemed upset or remorseful about the victim's death. Defendant sought to elicit rebuttal testimony, from a different officer, that defendant had been upset on at least one occasion and "[t]here were times when he was crying." The People argued, and the court agreed, that the testimony should be excluded as self-serving hearsay.

¶ 24    Defendant contends that because the prosecution opened the door to his demeanor, and the testimony did not involve hearsay, he was entitled to elicit this testimony as part of his right to present a defense. We agree that exclusion of the testimony was an abuse of discretion because the court misapplied the law in concluding that the evidence was hearsay.

¶ 25    Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. CRE 801(c). Nonverbal conduct may constitute hearsay if the conduct is intended to be communicative. CRE 801(a)(2). But a person's demeanor is generally not hearsay.

11

*See Markgraf v. State*, 12 P.3d 197, 199 (Alaska Ct. App. 2000) (holding that a person's apparent mental state is not routinely considered hearsay; collecting cases); *see also People v. Acosta*, 2014 COA 82, ¶ 33 ("In Colorado, it is well established that a lay witness may give a summary opinion of another person's behavior . . . or state of mind" if the witness personally observed the person's behavior.).

## B. Admission of Victim's Statements Under CRE 807

¶ 26    Defendant contends that the court abused its discretion in admitting statements made by the victim to two witnesses prior to her death under the residual hearsay exception, which permits admission of hearsay evidence with circumstantial guarantees of trustworthiness. *See* CRE 807. He specifically argues that the prosecution did not meet its burden to prove the trustworthiness of the victim's statements that (1) she "was being abused" by "[defendant]," in response to a friend's question about her black eye and marks on her arms; and (2) defendant "had tried strangling her," in response to another friend's question about marks on her neck.

¶ 27    The trial court found sufficient indicia of reliability for the victim's statements, which were testified to by friends who had personally witnessed defendant physically or verbally abusing the victim. The court found that the statements were nontestimonial, not motivated by a police investigation, and prompted by questions based on personal observations of the victim's bodily injuries. It further found that one of the witnesses "was able to vividly recall the details of the abuse." The court did not abuse its discretion in finding that these statements were sufficiently trustworthy. *See People v. Jensen,* 55 P.3d 135, 139 (Colo. App. 2001) (holding that trustworthiness could be determined from the nature and character of the statements, the relationship of the parties, the probable motivation of the declarant in making the statements, and the circumstances under which the statements were made).

C. Admission of Other Acts Toward Intimate Partners

¶ 28    After a pretrial hearing, the trial court ruled that two witnesses — defendant's ex-wife and his former girlfriend — could testify about defendant's specific acts while in their individual relationships.

¶ 29    Specifically, defendant's ex-wife would testify that

13

- in 1991, defendant assaulted her and told police officers that "if anybody here shows up dead, I'll be the one who did it";

- he hit her on the head and the stomach on October 9, 1993; and

- he threw her on the floor and punched her in the face on December 17, 1996.

These allegations were documented in contemporaneous police reports.

¶ 30    Defendant's ex-girlfriend would testify that

- defendant used a bicycle wheel to break her car window on August 23, 2005;

- he put his hands around her neck and covered her mouth in September 2005; and

- he told her about a past girlfriend who "ended up dead."

The broken car window was documented in a contemporaneous police report, and the ex-girlfriend reported the other incidents to police when she was interviewed in 2013.

¶ 31    Section 18-6-801.5(3), C.R.S. 2017, provides that evidence of other transactions is admissible in domestic violence cases like this

one "to show a common plan, scheme, design, identity, modus operandi, motive, or guilty knowledge or for some other purpose." Upon an offer of proof, the court may admit such evidence after considering "whether the probative value of the evidence . . . is substantially outweighed by the danger of unfair prejudice to the defendant, confusion of the issues, or misleading of the jury . . . ." § 18-6-801.5(4).

¶ 32    The trial court held a hearing and issued a detailed order regarding the admissibility of this other act evidence.  The court considered section 18-6-801.5 and CRE 404(b) and found that (1) defendant had committed the acts and (2) the evidence was related to a material fact with logical relevance independent of the prohibited inference of defendant's bad character.  The court concluded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, and was admissible.  At trial, it provided an appropriate instruction limiting consideration of the evidence to only defendant's motive, his intent, and whether he acted in accordance with a common plan.  The record supports the court's findings and conclusions.

IV. Conclusion

¶ 33    We reverse defendant's conviction and remand the case for a new trial.

JUDGE WEBB and JUDGE FOX concur.