22CA1273 Peo v Lujan 03-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1273
Boulder County District Court No. 13CR1829
Honorable Norma A. Sierra, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Abel Lujan,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Tow and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

---

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General and Assistant Solicitor General, Denver, Colorado, for
Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, James S. Hardy, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     A decade ago, a jury convicted defendant, Abel Lujan, of second degree murder for killing his girlfriend.  After a division of this court reversed Lujan's conviction, a second jury again found him guilty of second degree murder.  Lujan now appeals that conviction.  We affirm.

## I.     Background

¶ 2     In 1999, Lujan's girlfriend was found beaten and strangled in an alley.  A beer bottle was positioned in the victim's hand, which, in combination with a few other things, suggested that the body had been staged.

¶ 3     An autopsy revealed that the victim died by strangulation.  She also had broken ribs and a lacerated liver.  At the time, Lujan repeatedly denied any involvement in his girlfriend's death.  Over a decade later, however, DNA testing linked Lujan to the beer bottle placed in the victim's hand.

¶ 4     The prosecution charged Lujan with one count of first degree murder.  Departing from his original denial, Lujan defended on the theory that he killed his girlfriend but that he did so recklessly, not with intent or after deliberation.  The jury disagreed and found Lujan guilty of knowingly committing second degree murder.

¶ 5     Lujan appealed his conviction, arguing, among other things, that the trial court violated his public trial right.  *People v. Lujan*, 2018 COA 95, ¶ 8 (*Lujan I*), *rev'd*, 2020 CO 26 (*Lujan II*).  A division of this court agreed and reversed his conviction.  *Id.* at ¶¶ 20-32.

¶ 6     On certiorari review, the supreme court concluded that the trial court didn't violate Lujan's public trial right and remanded for the division to consider Lujan's remaining appellate contentions.  *Lujan II*, ¶ 4.

¶ 7     Back before this court, the division again reversed Lujan's conviction.  *People v. Lujan*, (Colo. App. No. 15CA1176, Aug. 6, 2020) (not published pursuant to C.A.R. 35(e)) (*Lujan III*).  This time it concluded that the trial court had violated Lujan's right to be present during a critical stage of the proceeding and had erred by excluding relevant evidence.  *Id.* at ¶¶ 22, 28, 35.

¶ 8     In his second trial, Lujan once more defended on the theory that he recklessly — not knowingly — killed his girlfriend.  The jury rejected Lujan's defense and convicted him of second degree murder.  The court sentenced Lujan to forty-eight years in prison.

¶ 9     On appeal, Lujan argues that (1) the trial court erred by admitting improper and prejudicial other act evidence under

CRE 404(b); (2) the prosecutor committed misconduct by improperly commenting on Lujan's invocation of his constitutional rights; and (3) the cumulative effect of these errors requires reversal.

## II. The Other Act Testimony

¶ 10 Lujan contends that the trial court erred by allowing Lujan's ex-wife and former girlfriend to testify about violent acts that Lujan directed against them and by admitting testimony from a bartender that witnessed Lujan assault the victim not long before Lujan killed her. We first address the testimony of Lujan's ex-wife and former girlfriend and then the bartender's testimony.

### A. The Ex-Wife's and Former Girlfriend's Testimony

¶ 11 Before the first trial, the prosecution filed a notice to introduce other act evidence from Lujan's ex-wife and former girlfriend. In a thorough written order, the trial court found that the evidence was admissible under Rule 404(b) and section 18-6-801.5, C.R.S. 2024. *See* CRE 404(b) (outlining purposes for which other act evidence may be introduced); § 18-6-801.5(3) (outlining purposes for which other act evidence may be introduced in domestic violence cases).

¶ 12     At trial, Lujan's ex-wife described an incident where Lujan strangled her until she "couldn't breathe" and told her she was going to die.  And Lujan's former girlfriend testified that Lujan had tried to suffocate her and threatened to kill her.  Contemporaneous with each witness's testimony, the court instructed the jury on the limited purposes of the testimony.

¶ 13     The trial court also allowed one of the victim's friends to testify — under an exception to the hearsay rule — that a week before the victim's death, she saw fingerprint marks on the victim's neck and that the victim told her that Lujan had tried to strangle her.

¶ 14     In his first appeal, Lujan contended that the trial court reversibly erred by admitting the other act testimony and the friend's testimony about the victim's statement.  *See Lujan I*, ¶¶ 26-32.  Though *Lujan I* reversed on other grounds, it expressly considered these evidentiary contentions.  And it concluded that the court didn't abuse its discretion by admitting either the victim's statement to her friend or his ex-wife's and former girlfriend's other act testimony under Rule 404(b) and section 18-6-801.5.  *Lujan I*, ¶¶ 26-32; *see also Lujan III*, ¶ 10 n.2 (reiterating that "Lujan raised

4

two additional evidentiary issues" in his first appeal that the division reviewed and rejected).

¶ 15    At the second trial — and this time with no objection — the prosecution introduced the other act testimony of Lujan's ex-wife and former girlfriend and the victim's statement to her friend that Lujan had tried to strangle her.[1]

¶ 16    Despite the fact that he didn't object to the testimony at the second trial, Lujan now contends that the trial court erred by admitting his ex-wife's and former girlfriend's other act testimony under Rule 404(b).[2]  But a division of this court already rejected this contention.  Indeed, *Lujan I* specifically held that the first trial court properly admitted the testimony under Rule 404(b) and section 18-6-801.5.  *Lujan I,* ¶¶ 26-32; *Lujan III,* ¶ 10 n.2.  The second trial court was bound by the law of the case.  *See People v.*

---

[1] Lujan's ex-wife died before the second trial, so a portion of the ex-wife's testimony from the first trial was read at the second trial.

[2] Lujan maintains that he preserved his objection to this CRE 404(b) testimony by objecting to the testimony at the first trial. Though we are skeptical that's sufficient to preserve the objection, it doesn't matter because, as we explain, the trial court had no discretion to depart from the division's resolution of the Rule 404(b) issue in *People v. Lujan,* 2018 COA 95 (*Lujan I*).  *See People v. Roybal,* 672 P.2d 1003, 1005 (Colo. 1983).

5

*Roybal*, 672 P.2d 1003, 1005 (Colo. 1983). And absent some change in the law or other changed circumstance — neither of which are argued here — we too generally follow the law of the case established by divisions of this court. *See People v. Morehead*, 2019 CO 48, ¶ 10 (noting that courts generally "refuse to reopen what has been decided"); *see also People v. Fogle*, 116 P.3d 1227, 1229 (Colo. App. 2004) (revisiting an earlier ruling of another division of this court based on an intervening supreme court decision).

¶ 17    Because *Lujan I* already concluded that the trial court didn't err by admitting the ex-wife's and former girlfriend's Rule 404(b) testimony, we won't revisit that ruling.

### B.    The Bartender's Testimony

¶ 18    Before Lujan's first trial, the prosecution also noticed its intent to present testimony from a bartender who had observed injuries on the victim and had witnessed Lujan strangling and threatening the victim a couple of weeks before he killed her. Over Lujan's objection, the trial court admitted the bartender's testimony under the res gestae doctrine. At trial, the bartender testified that a few weeks before Lujan killed the victim, she saw them arguing at the bar and followed them outside. There, the bartender witnessed

Lujan knock the victim to the ground and choke her. The bartender also heard Lujan tell the victim that she "didn't deserve to live" and that he was "going to put her ten feet in the ground."

¶ 19    In his first appeal, Lujan didn't challenge the court's ruling admitting this testimony. But between Lujan's first and second trials, our supreme court abolished the res gestae doctrine in criminal cases and established a new intrinsic-extrinsic framework for evaluating whether general relevance rules or Rule 404(b) applies to challenged evidence. *See Rojas v. People*, 2022 CO 8, ¶ 52.

¶ 20    At the second trial, and over Lujan's objection, the prosecution asked the court to admit the bartender's testimony under *Rojas.* The court first ruled that the testimony was intrinsic evidence and not subject to Rule 404(b). *See id.* At the prosecution's request, the court later found the bartender's testimony also satisfied Rule 404(b). *See id.*

¶ 21    The bartender was unavailable to testify at the second trial, so her original testimony describing the assault she witnessed and

threats she heard was read to the jury.[3]  Contemporaneous with the bartender's testimony, the court gave a limiting instruction to the jury.

¶ 22     Lujan contends that the trial court erred by admitting the bartender's testimony.  He argues the testimony wasn't intrinsic evidence and didn't satisfy Rule 404(b).

### 1.     Legal Principles and Standard of Review

¶ 23     Under Rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove a person's character to show that the person acted in conformity with that character on a particular occasion.  But such evidence may be admissible for another purpose, such as to prove motive, intent, plan, or knowledge.  CRE 404(b)(2); *see also* § 18-6-801.5(3).

¶ 24     Whether Rule 404(b) applies to other act evidence depends on whether the evidence is intrinsic or extrinsic to the charged crime. *Rojas*, ¶ 52.  If evidence is intrinsic, meaning that it directly proves the charged offense or occurred contemporaneously with and

---

[3] The bartender also testified that she observed visible injuries on the victim and that the victim admitted that Lujan had caused the injuries.  That testimony is not challenged on appeal.

facilitated its commission, it may be admitted under general evidentiary principles. *Id.*; *see also* CRE 401-403. Otherwise, the evidence is extrinsic, and its admission is governed by Rule 404(b) and *People v. Spoto*, 795 P.2d 1314 (Colo. 1990). *Rojas,* ¶ 52.

¶ 25    Other act evidence is admissible under *Spoto* if (1) it relates to a material fact; (2) it is logically relevant; (3) its relevance is independent of the intermediate inference that the person was acting in conformity with a bad character; and (4) its probative value is not substantially outweighed by the danger of unfair prejudice. *Spoto*, 795 P.2d at 1318.

¶ 26    We review a trial court's evidentiary ruling for an abuse of discretion, meaning we will not disturb the ruling unless it misconstrues the law or is otherwise manifestly arbitrary, unreasonable, or unfair. *People v. Johnson*, 2019 COA 159, ¶ 10, *aff'd*, 2021 CO 35.

### 2.    The Trial Court Properly Admitted the Bartender's Testimony Under Rule 404(b)

¶ 27    The trial court admitted the bartender's testimony both as direct intrinsic evidence and as other act evidence under Rule

404(b).  We agree the evidence was properly admitted under Rule 404(b).[4]

¶ 28    The trial court found that the bartender's testimony about Lujan's previous strangulation and threats related to the material fact of Lujan's state of mind, the evidence was logically relevant to Lujan's intent, the logical relevance was independent of an improper propensity inference, and the probative value substantially outweighed the danger of unfair prejudice.

¶ 29    Though Lujan argues the court erred at every *Spoto* step, he lumps together his arguments regarding the bartender's testimony with that of the ex-wife, former girlfriend, and victim's friend.  Thus, Lujan doesn't develop any specific argument explaining how the trial court erred by admitting the bartender's testimony under Rule 404(b), leaving us limited in our review.

¶ 30    Even so, because the only contested trial issue was Lujan's mental state, we agree with the trial court that Lujan's act of choking the victim coupled with his threats to kill her just weeks

---

[4] Because the bartender described an incident that occurred weeks before Lujan killed the victim, we are doubtful that the testimony was intrinsic evidence, but we needn't resolve that issue here because we may affirm on any basis supported by the record.

10

before her death satisfied *Spoto*. The evidence was relevant to a material fact — that is, Lujan's mental state. *See People v. McBride*, 228 P.3d 216, 227 (Colo. App. 2009) (evidence of the defendant's prior violent acts were admissible to prove intent). And the evidence was logically relevant to the only disputed issue — whether Lujan acted knowingly — and that relevance was independent of any propensity inference. *See id.*; *see also* § 18-6-801.5(1) (prior acts of domestic violence are generally considered "helpful and . . . necessary" to establish, among other things, the "escalating levels of seriousness" of the domestic violence). As well, the evidence, though prejudicial, was not unfairly so because it was probative as to whether the strangulation causing the victim's death was knowing or reckless. *See McBride*, 228 P.3d at 227 (The defendant's "prior violent acts against the victim were highly probative, as they bore directly on whether the shooting was intentional . . . or accidental."); *see also People v. Cross*, 2023 COA 24, ¶ 22 (In enacting section 18-6-801.5, the legislature "placed its

11

finger on the scale in favor of admitting evidence of prior acts of domestic violence in prosecutions involving domestic violence.").[5]

¶ 31 We therefore conclude that the trial court didn't abuse its discretion by admitting the bartender's testimony under Rule 404(b).

### III. Prosecutorial Misconduct

¶ 32 When the victim's body was discovered, police went immediately to Lujan's home. Despite some evidence that he was home, Lujan didn't respond when the police knocked and announced themselves. Police later returned with a warrant and Lujan eventually met with officers.

¶ 33 At trial, the prosecutor outlined this series of events in opening statement, elicited testimony about it during the direct examination of a detective, and referenced the initial interaction in closing argument by arguing that Lujan "hid" in his apartment.

---

[5] Lujan doesn't develop any specific argument that the trial court plainly erred by admitting the victim's friend's testimony under CRE 404(b). At most, he generically references the friend's testimony in his Rule 404(b) argument. To the extent that Lujan contends that the friend's testimony was also improper other act evidence, we reject that argument for the same reason we reject the contention with respect to the bartender's testimony.

¶ 34    Lujan objected to the opening statement and direct examination but not closing argument.  He argued that the prosecutor's opening statement and direct examination improperly referenced Lujan's "exercise of [his] constitutional rights."  The court overruled the objections.

¶ 35    Lujan maintains that the trial court erred by allowing the prosecutor to improperly comment on his Fourth and Fifth Amendment rights.

¶ 36    We engage in a two-step analysis when reviewing a claim of prosecutorial misconduct.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  First, we "must determine whether the prosecutor's questionable conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal according to the proper standard."  *Id.*

¶ 37    We generally review preserved prosecutorial misconduct claims for an abuse of discretion and reverse only if the error substantially influenced the verdict or impaired the fairness of the trial.  *Hagos v. People*, 2012 CO 63, ¶ 12.  But we review conduct that "directly offend[s] a defendant's constitutional rights" for constitutional harmless error, *Wend*, 235 P.3d at 1097, which

requires reversal unless we are "confident beyond a reasonable doubt that the error did not contribute to the guilty verdict," *Bernal v. People*, 44 P.3d 184, 200 (Colo. 2002). And we review unpreserved misconduct claims for plain error and reverse only if the error was obvious and "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos*, ¶ 14 (quoting *People v. Miller*, 113 P.3d 743, 748-50 (Colo. 2005)).

¶ 38    When officers first went to Lujan's house, Lujan wasn't in custody. Officers knocked on his door, announced themselves, and told him to come out. Lujan remained inside and didn't respond. Whether the prosecutor's description of this first encounter and the officer's brief testimony about it was a "comment" on Lujan's "invocation" of his constitutional rights is not without doubt. *See People v. Rios*, 2020 COA 2, ¶ 35 (noting that the Fifth Amendment doesn't apply in noncustodial settings); *People v. Buckner*, 2022 COA 14, ¶ 28 ("[A] person's *refusal to consent* to a search may not be used by the prosecution — either through the introduction of evidence or by explicit comment — to imply the person's guilt of a crime." (quoting *People v. Pollard*, 2013 COA 31M, ¶ 32)) (emphasis

14

added); *see also Salinas v. Texas*, 570 U.S. 178, 181 (2013) (a defendant does not invoke the Fifth Amendment privilege against self-incrimination "by simply standing mute").

¶ 39    But even if we assume some error, it isn't reversible under any standard. After all, years after the initial police encounter, Lujan admitted he killed his girlfriend. The only issue at his second trial was whether he acted knowingly or recklessly. Whether he initially declined to respond when the officers knocked on his door says nothing about his mental state when he strangled the victim. And even though the prosecutor argued the evidence was relevant to show consciousness of guilt, it was undisputed at trial that Lujan was guilty of killing the victim. Thus, the evidence of the initial encounter with the police was immaterial to the only disputed issue at trial.

¶ 40    For that reason, even if we construe Lujan's nonresponse to the detective's attempt to contact him as an "invocation" of his Fourth and Fifth Amendment rights and assume that the prosecutor improperly commented on and elicited some testimony about that invocation, reversal isn't required.

## IV. Cumulative Error

¶ 41    Finally, although we have assumed one possible nonprejudicial error, cumulative error requires "multiple errors that collectively prejudice the substantial rights of the defendant." *Howard-Walker v. People*, 2019 CO 69, ¶ 25. We therefore reject Lujan's cumulative error contention.

## V. Disposition

¶ 42    The judgment is affirmed.

JUDGE TOW and JUDGE MEIRINK concur.